A03A1275. INTERNATIONAL BIOCHEMICAL INDUSTRIES, INC.
v. JAMESTOWN MANAGEMENT CORPORATION et al.
(586 SE2d 442)

ELLINGTON, Judge.

This appeal arose from an action to recover unpaid rent and other expenses due under the terms of a commercial lease. The trial court granted summary judgment to the lessor's agent, Jamestown Management Corporation (Jamestown), and International Biochemical Industries, Inc. f/k/a Bioshield Technologies, Inc.[1] (Bioshield), the

---

[1] We granted the appellant's motion to change the style of the case.

former tenant who breached the lease, appeals. Bioshield contends that the doctrine of res judicata barred the underlying action and that the trial court erred in finding otherwise. Bioshield also asserts that the trial court erred by granting summary judgment on its counterclaim and in denying its motion to strike portions of an affidavit. We find no error and affirm.

On July 9, 1999, Bioshield entered into a ten-year commercial lease with Cologne Investors, Ltd. and Erwin Walter Graebner as lessors, and Jamestown as agent for the lessors. Bioshield leased an office building at 5655 Peachtree Parkway, Norcross, Georgia, at the initial monthly rate of $29,967.17. Under the lease, the base rent gradually increased to a maximum of $15.54 per square foot, or $71,644.58 per month.

In the event of default, the lease provided for several remedies, including, but not limited to, the termination of the lease and acceleration of future rent. Under Paragraph 12.1.1, the lessor could terminate the lease, obtain possession, then seek indemnification from the lessee "for all loss, cost, expense, and damage which Lessor may suffer by reason of the termination, whether through inability to relet the Premises, or through decrease in rent or otherwise." Alternatively, under Paragraph 12.1.2 the lessor could:

> [w]ithout terminating this Lease, retake possession of the Premises and rent the Premises, or any part thereof, for such term or terms and for such rent and upon such conditions as Lessor may, in its sole discretion, think best. . . . All rent received by Lessor from any reletting shall be applied first to the payment of any indebtedness . . . ; second, to the payment of any costs and expenses of the reletting . . . ; third, to the payment of rent due and unpaid hereunder, and the residue, if any, shall be held by Lessor and applied in payment of future rent or damage as they may become due and payable hereunder. If the rent received from the reletting during the Lease Term is at any time insufficient to cover the costs, expenses, and payments enumerated above, Lessee shall pay any deficiency to Lessor, as often as it shall arise, on demand.

During the second year of the lease, Bioshield abandoned the premises, relocated elsewhere, and failed to pay any rent after December 2000. Jamestown did not terminate the lease. As was its option under Paragraph 12.1.2, Jamestown chose to regain possession without terminating the lease and to relet the premises. After Bioshield moved out, Jamestown, on behalf of itself and the lessors, instituted a dispossessory proceeding against Bioshield and sought

the unpaid rent for December 2000 and January 2001. The dispossessory action resulted in a default judgment against Bioshield on January 29, 2001, for $151,706.10 for two months past due rent.

Thereafter, Jamestown undertook various marketing activities to attempt to relet the premises but could not find another tenant. In December 2001, Jamestown sued Bioshield for rent, late fees, interest, attorney fees, and damages for bad faith. Bioshield answered and counterclaimed. Among other defenses, Bioshield asserted that the claims were "barred by res judicata, collateral estoppel and estoppel by judgment." Bioshield counterclaimed that Jamestown had "unreasonably prevented" it from having access to the building to remove telephone equipment that Bioshield had leased from a third party. Bioshield claimed that because it could not recover the telephone equipment, it had been sued by the third party.

To establish damages, Jamestown offered the affidavit testimony of James B. Reaves, the vice president of asset management for Jamestown. Reaves testified as to the amount of rent, interest, and expenses due under the lease for the period from February 2001 through August 2002.

In directing summary judgment against Bioshield, the trial court made several findings. Noting that the lease had not been terminated, the court found that the lease provided a right to obtain future rent that had not yet accrued at the time of the dispossessory proceeding. As to Bioshield's counterclaim, the trial court found "[Jamestown] by the terms of the lease is not responsible for the equipment left on the premises. [Bioshield] created the quandary with which it is now faced."

1. Bioshield contends that the trial court erred by failing to apply the doctrine of res judicata. Bioshield argues that Jamestown's failure to bring the claim for future rent or accelerated rent in the dispossessory action precluded it from doing so later. Bioshield asserts OCGA § 44-7-55, the statute governing dispossessory actions, intends for all related claims between a landlord and tenant to be determined in a dispossessory proceeding. See *America Net v. U. S. Cover, Inc.*, 243 Ga. App. 204, 206 (532 SE2d 756) (2000). Bioshield claims that OCGA § 44-7-55 (a) required Jamestown to bring the claim "for all rents due and for any other claim relating to the dispute" in the dispossessory proceeding. Bioshield argues that the lease afforded Jamestown only "two options: (1) seek recovery of future rent in the dispossessory action; or (2) dismiss the dispossessory action (since the tenant had already vacated) and litigate both the past and future contract rent claim in one proceeding in state court." Bioshield contends that because the lease permitted Jamestown to collect post-eviction rent, Jamestown was obligated to do so in the

dispossessory proceeding and so as a result "the doctrine of res judicata bars Jamestown's second lawsuit for rent."

"[I]t is general contract law in Georgia that parties are free to contract about any subject matter, on any terms, unless prohibited by statute or public policy, and injury to the public interest clearly appears." (Citation and punctuation omitted.) *Kurc v. Herren*, 196 Ga. App. 331, 332 (1) (396 SE2d 62) (1990). "Absent a limiting statute or controlling public policy, parties may contract with one another on whatever terms they wish and the written contract defines the full extent of their rights and duties." (Citations and punctuation omitted.) *American Med. Transp. Group v. Glo-An, Inc.*, 235 Ga. App. 464, 465 (1) (509 SE2d 738) (1998).

Although the general rule is that when a landlord evicts a tenant and takes possession of the premises, the lease is terminated and the right to claim rent which accrues after eviction is extinguished, the parties to a lease may contract to hold the lessee liable for post-eviction rent. *Peterson v. P. C. Towers, L.P.*, 206 Ga. App. 591 (2) (426 SE2d 243) (1992). Here, the contracting parties agreed in advance that without terminating the lease, the lessor could relet the premises and that "[i]f the rent received from the reletting during the Lease Term is at any time insufficient to cover the costs, expenses, and payments enumerated above, Lessee shall pay any deficiency to Lessor, as often as it shall arise, on demand." Thus, the express terms in the lease belie Bioshield's characterization of the options afforded to Jamestown. Contrary to Bioshield's claim, the plain and unambiguous terms in the lease did not require Jamestown to recover future rent in the dispossessory or to dismiss the dispossessory and seek past and future rent in one claim.

Instead, Paragraph 12.1.2 clearly and unambiguously authorized Jamestown to retake possession of the premises without terminating the lease, to rent the premises to a new tenant then to recover from Bioshield for the costs and expenses of reletting and to obtain any resulting deficiency from Bioshield. In addition, in Paragraph 12.4, the contracting parties also agreed that the "[p]ursuit of any of the remedies herein provided shall not preclude the pursuit of any other remedies herein provided or any other remedies provided at law or in equity." The evidence shows without dispute that Jamestown was unable to relet the premises, resulting in a substantial shortfall. The explicit and detailed provisions in the lease clearly and unequivocally expressed the contracting parties' intent to hold Bioshield liable for the deficiency that, in fact, ultimately arose. See *Peterson*, 206 Ga. App. at 592 (2); compare *Bentley-Kessinger, Inc. v. Jones*, 186 Ga. App. 466, 468 (367 SE2d 317) (1988).

Notwithstanding Bioshield's claim to the contrary, the doctrine of res judicata codified at OCGA § 9-12-40 did not foreclose James-

town's suit on the lease. In order for res judicata to bar the subsequent action, three requirements must be met: "[t]he first action must have involved an adjudication by a court of competent jurisdiction; the two actions must have an identity of parties and subject matter; and the party against whom the doctrine of res judicata is raised must have had a full and fair opportunity to litigate the issues in the first action." (Citations omitted.) *Grant v. Franklin*, 244 Ga. App. 370, 371 (534 SE2d 584) (2000). Here, the third requirement was not satisfied because Jamestown did not have a full and fair opportunity to litigate a deficiency that was impossible to calculate at the time of the dispossessory. See *Lowenberg v. Ford & Assoc.*, 165 Ga. App. 753, 754 (302 SE2d 433) (1983).

Bioshield's reliance upon *Atlanta J's v. Houston Foods*, 237 Ga. App. 415 (514 SE2d 216) (1999), is misplaced because that case is factually and legally distinguishable. In *Atlanta J's*, the landlord filed an action in superior court seeking amounts allegedly due under a lease. While that action was still pending, the landlord filed a dispossessory action in magistrate court against the tenant seeking only a writ of possession. The landlord expressly noted that it did not seek recovery of past due rent because that matter was the subject of the other litigation. After the magistrate court issued a writ of possession, the tenant moved for summary judgment in superior court on the basis of res judicata. On appeal, this Court held that the doctrine of res judicata barred the other suit because "[b]y electing to divide its claims into two separate actions, and seeking separate relief in each action, plaintiff ran the risk that a judgment in one action would operate as a bar to the other action." Id. at 420 (5).

In *Atlanta J's*, unlike here, when the landlord filed the dispossessory action, the lease already had been terminated. Id. at 416. In this case, the lease had not been terminated and Jamestown could have asserted the claim for a deficiency, because that claim had not yet ripened and the amount remained indeterminate at the time of the dispossessory proceeding. Jamestown could not have known in December 2000 that it would be unable to find a replacement tenant during the upcoming year. Further, as a general rule, "[w]here suit is brought on a written contract for rent payable in installments, a recovery cannot be had for installments falling due after the suit is commenced." (Citation and punctuation omitted.) *Nickerson v. Candler Bldg.*, 156 Ga. App. 396, 399 (5) (274 SE2d 582) (1980). "Each installment under a contract constitutes a different cause of action on which an action can be brought, even though all are provided for in the same contract." (Citation and punctuation omitted.) Id. at 400. Stated simply, in December 2000, Jamestown could not recover future rent installments because they were not yet due under the lease. See *Dwyer v. Anand*, 210 Ga. App. 419, 420 (1) (436 SE2d 532)

(1993). Since Jamestown could not have prosecuted all of its claims in the dispossessory proceeding in magistrate court, *Atlanta J's* does not control and the grant of summary judgment was not error. See *American Med. Transp.*, 235 Ga. App. at 466 (1).

2. Bioshield contends that the trial court erred in granting summary judgment on its counterclaim "because the lease does not authorize Jamestown to interfere with or otherwise hold the property of third parties." Bioshield claims that due to Jamestown's "deliberate interference," it was unable to obtain a credit from Inter-Tel, Leasing, Inc. for the early return of the leased equipment and was sued for a deficiency.

Under certain conditions, when a lease is terminated and that lease contains a stipulation that deems title to abandoned property in the lessor, then the tenant's personalty remaining on the premises may be considered "abandoned" as a matter of contract law, notwithstanding any intent of the tenant to the contrary. *Kurc*, 196 Ga. App. at 333 (2). Here, Paragraph 19 of the lease entitled "PROPERTY LEFT ON THE PREMISES" provided in part:

> Upon the expiration of this Lease, or if the Premises should be abandoned by Lessee, or if this Lease should terminate for any cause, or if Lessee should be dispossessed after default, if at the time of any such expiration, abandonment, termination or dispossession, Lessee . . . should leave any property of any kind or character in or on the Premises, such property shall be the property of Lessor and the fact of such leaving of property in or upon the Premises shall be conclusive evidence of the intent by Lessee . . . to abandon such property so left . . . and such leaving shall constitute abandonment of the property. . . . Lessor, its agents or attorneys, shall have the right and authority without notice to Lessee . . . to remove and destroy, store, sell or otherwise dispose of, such property, or any part thereof, without being in any way liable to Lessee.

It is undisputed that when Bioshield vacated the premises on December 9, 2000, it left behind some telephone equipment that it was leasing from Inter-Tel, a third party. Under the explicit terms of the lease, by leaving the telephone equipment behind, Bioshield abandoned that property, a fact that Bioshield admitted. In Paragraph 19, Bioshield agreed to waive any right to hold Jamestown "in any way liable" with respect to property so abandoned. Therefore, the trial court properly entered judgment on Bioshield's counterclaim. See *Kurc*, 196 Ga. App. at 332.

3. Bioshield contends that the trial court erred in denying its motion to strike portions of Reaves' affidavit. Bioshield claims that paragraphs 13, 14, and 15 and exhibits 2, 3, and 4 contain inadmissible hearsay. Bioshield argues that Reaves is not employed by Cologne Investors, the lessor, and that his testimony did not indicate that he was familiar with Cologne's business records or methods of keeping such records.

Unless a recognized exception applies, hearsay testimony is inadmissible. *K-Mart Corp. v. Lovett*, 241 Ga. App. 26, 29 (4) (525 SE2d 751) (1999). When an affidavit contains material not admissible in evidence, it is subject to a motion to strike. *Vickers v. Chrysler Credit Corp.*, 158 Ga. App. 434, 440 (280 SE2d 842) (1981). Absent a finding of an abuse of discretion, a trial court's decision to admit testimony as an exception to the rule against hearsay will not be disturbed. See *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 857 (2) (501 SE2d 30) (1998).

Jamestown is the managing agent for Cologne Investors and Graebner, the lessors. Reaves, Jamestown's vice president, executed the lease as their agent. In the affidavit testimony at issue, Reaves testified in paragraphs 13 through 15, that Bioshield is responsible for certain operating expenses and for the payment of property taxes, facts borne out by the lease itself. In support of the amounts claimed, Reaves attached copies of the general ledger for the year ending December 31, 2001, and the general ledger through August 31, 2002. Reaves attested that each document "is a true and correct copy of a document maintained in the ordinary course of business and it is the ordinary course of business to make such a record at or near the time the expenses are incurred." Reaves also testified that the property tax bill for 2002 was not included on the general ledger and that he was attaching "a true and correct copy of the tax bill" for 2002.

It is not necessary that the affiant personally control or personally make the entries in the documents for the business records exception to apply. See *Carter v. Tokai Financial Svcs.*, 231 Ga. App. 755, 759-760 (500 SE2d 638) (1998). Reaves testified that he was competent to testify about "the matters stated herein" and that he was testifying based "upon [his] own personal knowledge." The information contained in the affidavit and exhibits falls squarely within the business records exception to the hearsay rule codified at OCGA § 24-3-14. See *Wheat Enterprises*, 231 Ga. App. at 857-858 (2). Lack of personal knowledge as to any specific facts contained in the records would go to the weight of the evidence, not its admissibility. See *Smith v. Bank of the South*, 141 Ga. App. 114 (232 SE2d 629) (1977). The trial court did not abuse its discretion in refusing to grant the motion to strike. See *Wheat Enterprises*, 231 Ga. App. at 857 (2).

*Judgment affirmed. Blackburn, P. J., and Phipps, J., concur.*

DECIDED AUGUST 15, 2003.

*Schreeder, Wheeler & Flint, Lynn C. Stewart, Scott D. McAlpine,* for appellant.
*Holland & Knight, Susan E. Edlein,* for appellees.