STATE OF CONNECTICUT *v.* RICHARD SAUCIER
(SC 17502)

Borden, Norcott, Katz, Palmer, Vertefeuille, Zarella and Sullivan, Js.*

---

* This case originally was argued before a panel of this court consisting of Justices Norcott, Katz, Palmer, Vertefeuille and Zarella. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Accordingly, Justice Borden and Senior Justice Sullivan were added to the panel, and they have read the record, briefs and transcript of the oral argument.

Argued October 25, 2006—officially released July 17, 2007

*Glenn W. Falk*, special public defender, with whom, on the brief was, *Caitlin McCann*, law student intern, for the appellant (defendant).

*Julia K. Conlin*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Robin Lipsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The issue in this certified appeal is whether a particular statement made by the victim[1] to an acquaintance in reference to the defendant, Richard Saucier, the day after she had identified the defendant as her attacker, should have been admitted into evidence at trial pursuant to the state of mind exception to the hearsay rule, § 8-3 (4) of the Connecticut Code of Evidence.[2] Pursuant to that inquiry, we also must consider whether the Appellate Court properly reviewed this ruling by the trial court under the plenary, rather than the abuse of discretion, standard of review. The defendant appeals, upon our grant of certification,[3] from the judgment of the Appellate Court affirming the judgment of conviction, rendered following a jury trial, of four counts of sexual assault in the first degree in

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] Section 8-3 of the Connecticut Code of Evidence provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . .

"(4) . . . A statement of the declarant's then-existing mental or emotional condition, including a statement indicating a present intention to do a particular act in the immediate future, provided that the statement is a natural expression of the condition and is not a statement of memory or belief to prove the fact remembered or believed. . . ."

[3] We granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly conclude that the trial court properly excluded as hearsay a statement made by the victim to an acquaintance?" *State* v. *Saucier*, 275 Conn. 928, 883 A.2d 1251 (2005).

violation of General Statutes § 53a-70 (a) (1) and one count of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A). *State* v. *Saucier*, 90 Conn. App. 132, 134, 876 A.2d 572 (2005). We conclude that the trial court did not abuse its discretion when it determined that the statement was hearsay not subject to the state of mind exception. Accordingly, we affirm the judgment of the Appellate Court.

The jury reasonably could have found the following facts, as set forth in the opinion of the Appellate Court. "On January 10, 2002, the defendant telephoned the victim and asked her to cover a shift as a bartender at a restaurant [at which they both previously had worked]. The victim agreed and later was picked up by the defendant, who drove her to work. Following her shift, the victim drove with the defendant to a friend's house, where they smoked marijuana. The two left after twenty minutes. The victim was under the impression that the defendant was going to drive her home. Instead, he drove her to a deserted tractor-trailer park, then to a highway underpass and finally to his home. The defendant brutally and repeatedly sexually assaulted the victim at each location. Early the next morning, after the defendant had fallen asleep, the victim escaped and ran virtually naked to a nearby business, where the police were called. The police took the victim to a hospital, stopping briefly en route in order for the victim to point out the defendant's home." Id., 134–35.

Thereafter, the state charged the defendant with six counts of sexual assault in the first degree in violation of § 53a-70 (a) (1), and one count of kidnapping in the first degree in violation of § 53a-92 (a) (2) (A). The jury returned verdicts of guilty on the first four counts of sexual assault and on the kidnapping charge, and not guilty on the fifth and sixth counts of sexual assault. The trial court rendered a judgment of conviction in accordance with the jury's verdict, and sentenced the

defendant to a total effective sentence of thirty years imprisonment, with ten years special parole.

The defendant appealed from the judgment of conviction to the Appellate Court. The Appellate Court affirmed the defendant's convictions, concluding, inter alia,[4] that the trial court properly had sustained the state's objection on hearsay grounds to the admission of the following statement made by the victim, the day after the assault, to John J. Hoban, an acquaintance, " 'I got Richie. I got him good.' " Id., 143. The Appellate Court, relying primarily on our decision in *State* v. *Freeney*, 228 Conn. 582, 595, 637 A.2d 1088 (1994), concluded that this statement did not fall within the state of mind exception to the hearsay rule; see Conn. Code Evid. § 8-3 (4); because it was a statement of past intent or motive after an act, rather than a statement of present or future intent. *State* v. *Saucier*, supra, 90 Conn. App. 145–46. This certified appeal followed. See footnote 3 of this opinion.

On appeal, the defendant claims that the Appellate Court improperly upheld the exclusion of the victim's statement to Hoban because that statement was relevant and not hearsay in that it was not offered to prove the truth of the matter asserted, or if the statement was hearsay, it is subject to the state of mind exception to the hearsay rule. The defendant contends that the exclusion of the statement was not harmless error because the statement was noncumulative evidence of the victim's credibility in a case resting largely on her testimony. In response, the state claims that we should

---

[4] The defendant also claimed in the Appellate Court that "the trial court improperly (1) prohibited him from cross-examining the victim about her 2000 federal income tax return . . . [and] (2) prohibited him from presenting the victim's alias to the jury and from testifying about the victim's use of an alias to avoid creditors . . . ." *State* v. *Saucier*, supra, 90 Conn. App. 134. The Appellate Court also rejected these claims, which are not before us in this certified appeal. Id., 139, 142–43.

not review the defendant's claim that the statement was not hearsay because he: (1) failed to preserve it before the trial court; and (2) did not brief that claim in the Appellate Court. The state also contends that the trial court properly excluded the victim's statement to Hoban because it was: (1) so ambiguous as to be meaningless and therefore, irrelevant; and (2) offered as a statement of memory or belief to prove a fact, specifically, that she had fabricated the allegations against the defendant. Finally, the state claims that any evidentiary impropriety in this case is harmless error. We conclude that: (1) the defendant abandoned his claim that the statement was not hearsay by failing to raise it before the Appellate Court; and (2) the statement was not admissible pursuant to the state of mind exception to the hearsay rule.

The record reveals the following additional relevant facts and procedural history. After the state had rested its case and the trial court denied the defendant's motion for a judgment of acquittal, the defendant called Hoban as a witness. Hoban testified during an offer of proof outside the jury's presence, that he had been friendly with the victim for a couple of years, and that she frequently had confided in him. Hoban also testified, however, that he did not know her last name at any time. He then was questioned by defense counsel about the conversation that he had had with the victim on January 10, 2002, the day after the assault:

"Q. [D]irecting your attention, sir, to the day after January 10, 2002, did [the victim] confide something in you on that date?

"A. I got a call in the morning from her.

"Q. What did she confide in you, sir?

"A. I didn't understand it, but she says, '*I got him. I got him good.*'

"Q. What did you respond to that?

"A. I said . . . what are you talking about? *'I got Richie. I got him good.'* And she hung up.

"Q. That was it?

"A. Yeah. And I didn't know what she was talking about. I went over to my office about an hour and a half later, read the paper . . . ." (Emphasis added.)

At that point, the state argued that Hoban's testimony about the victim's statement to him was inadmissible hearsay. In response, the defendant argued, inter alia, that the statement was offered to show the victim's state of mind.[5] The trial court concluded that the statement was inadmissible under the state of mind exception because that exception applies to "present mind for future or past acts," and the victim's statement

---

[5] The defendant's entire argument before the trial court was as follows:

"The Court: How do you claim [the statement's admissibility] . . . ?

"[Defense Counsel]: Three ways, Your Honor. The first way is I would claim that it is an out-of-court statement, not hearsay if it's offered to illustrate circumstantially the declarant's then existing state of mind rather than the truth of the matter asserted. The state of mind, my contention being, she was aware of the fact the accusations were fabricated.

"Secondly, I would ask that it be introduced as a statement offered solely to impeach a witness such as a prior inconsistent statement which is not hearsay use of the statement. It's not offered to prove the—it's offered to prove it was made, but not that it was true.

"Thirdly, I would again go back to the area of the residual exception. Residual exception can take place when there's reasonable necessity for the admission of such a statement when it's supported by adequate basis of assurance that the evidence has those qualities of reliability and trustworthiness attributable to other evidence.

"He has indicated he was a friend of [the victim] for a couple of years. [The victim] confided in him as far as things in her life was concerned. This was an issue of her confiding with him the day after an act of alleged sexual assault took place. I think there's an adequate basis of assurance that this evidence has the qualities of reliability and trustworthiness that are needed. I also think there's a reasonable necessity for it to be admitted in order for the jury to understand the true situation. So, for those three reasons, I'd ask the court to allow the statements to be testified in front of the jury."

referred to a past act.[6] Accordingly, the trial court sustained the state's objection.

## I

We note at the outset that the defendant's claim requires that we clarify the standard of review applicable to a trial court's ruling about whether evidence is admissible pursuant to an exception to the hearsay rule. The defendant relies on the standard applied by the Appellate Court in this case, that "[w]hether evidence offered at trial is admissible pursuant to one of the exceptions to the hearsay rule presents a question of law" subject to plenary review. (Internal quotation marks omitted.) *State* v. *Saucier*, supra, 90 Conn. App. 144, quoting *State* v. *Gonzalez*, 75 Conn. App. 364, 375, 815 A.2d 1261 (2003), rev'd on other grounds, 272 Conn. 515, 864 A.2d 847 (2005). The state contends in response that the Appellate Court improperly engaged in plenary review of the trial court's evidentiary ruling, and that the abuse of discretion standard controls such questions. We recognize that the decisions by our appellate courts have not been a model of clarity in this regard,[7] and we take this opportunity to resolve the confusion.

[6] With respect to the defendant's other arguments in support of the statement's admissibility; see footnote 5 of this opinion; the trial court concluded that the statement also was inadmissible: (1) as a prior inconsistent statement; see Conn. Code Evid. § 6-10; because the defendant had not laid the proper foundation by asking the victim about it when she testified; and (2) under the residual exception to the hearsay rule; see Conn. Code Evid. § 8-9; because it lacked reliability given both the statement's ambiguity, and the fact that Hoban did not know the victim well enough to know her last name.

[7] The Appellate Court recently observed in *Brown* v. *Bright Clouds Ministries, Inc.*, 94 Conn. App. 181, 184 n.2, 891 A.2d 999, cert. denied, 278 Conn. 907, 899 A.2d 35 (2006), that "[a]t least three of [its] decisions state that the admissibility of evidence pursuant to an exception to the rule against hearsay is a question of law subject to plenary review. See *State* v. *Saucier*, [supra, 90 Conn. App. 144]; *Doe* v. *Christoforo*, 87 Conn. App. 359, 363, 865 A.2d 444, cert. granted on other grounds, 273 Conn. 920, 871 A.2d 1027 (2005) (appeal withdrawn October 13, 2005); *State* v. *Gonzalez*, [supra, 75 Conn. App. 375]." The Appellate Court attempted in *Brown* to reconcile these decisions with the well established abuse of discretion standard of review

There is a split of authority among other jurisdictions on how evidentiary rulings addressing admissibility under the hearsay rule and its exceptions are to be reviewed. A majority of courts review such trial court evidentiary rulings for an abuse of discretion;[8] while

that our appellate courts generally apply to evidentiary rulings; see *State* v. *Skakel*, 276 Conn. 633, 724, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006) ("[t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion" [internal quotation marks omitted]); *State* v. *Cortes*, 276 Conn. 241, 254, 885 A.2d 153 (2005) (same); noting that "[p]lenary review is appropriate, however, only when an evidentiary ruling involves a clear misconception of the law." *Brown* v. *Bright Clouds Ministries, Inc.*, supra, 184 n.2; *State* v. *Aaron L.*, 272 Conn. 798, 811 n.19, 865 A.2d 1135 (2005) (noting that, in considering "whether the trial court properly ruled that the statement at issue fell within the medical treatment exception to the hearsay rule, a pure question of law, the Appellate Court conducted a de novo review, concluding that the trial court's ruling was legally incorrect"). We also bear responsibility for the confusion by pronouncing broad generalities. See, e.g., *State* v. *Rizzo*, 266 Conn. 171, 285, 833 A.2d 363 (2003) ("[b]ecause the rules of evidence applied [to the state's burden of proof of aggravating factors], we review the defendant's claim under the abuse of discretion standard").

[8] See *United States* v. *Brown*, 441 F.3d 1330, 1359 (11th Cir. 2006), cert. denied, 549 U.S. 1182, 127 S. Ct. 1149, 166 L. Ed. 2d 998 (2007); *United States* v. *Washington*, 434 F.3d 7, 14 (1st Cir. 2006); *United States* v. *Dazey*, 403 F.3d 1147, 1165–66 (10th Cir. 2005); *United States* v. *Slaughter*, 386 F.3d 401, 403 (2d Cir. 2004); *United States* v. *Breland*, 356 F.3d 787, 792 (7th Cir.), cert. denied, 542 U.S. 944, 124 S. Ct. 2924, 159 L. Ed. 2d 825 (2004); *United States* v. *Alexander*, 331 F.3d 116, 121–22 (D.C. Cir. 2003); *United States* v. *Solis*, 299 F.3d 420, 443 (5th Cir.), cert. denied sub nom. *Mendez* v. *United States*, 537 U.S. 1060, 123 S. Ct. 640, 154 L. Ed. 2d 543 (2002); *United States* v. *Jackson*, 124 F.3d 607, 618 (4th Cir. 1997), cert. denied, 522 U.S. 1066, 118 S. Ct. 733, 139 L. Ed. 2d 670 (1998); *Kolmes* v. *World Fibers Corp.*, 107 F.3d 1534, 1542 (Fed. Cir. 1997); *Queen* v. *Belcher*, 888 So. 2d 472, 477 (Ala. 2003); *Wyatt* v. *State*, 981 P.2d 109, 112 (Alaska 1999); *State* v. *Montano*, 204 Ariz. 413, 426, 65 P.3d 61 (2003); *Dednam* v. *State*, 360 Ark. 240, 243, 200 S.W.3d 875 (2005); *People* v. *Guerra*, 37 Cal. 4th 1067, 1113, 129 P.3d 321, 40 Cal. Rptr. 3d 118 (2006), cert. denied, 549 U.S. 1182, 127 S. Ct. 1149, 166 L. Ed. 2d 998 (2007); *In re Water Rights of Central Colorado Water Conservancy District* v. *Greeley*, 147 P.3d 9, 17 n.7 (Colo. 2006); *Walton* v. *State*, 821 A.2d 871, 878 (Del. 2003); *International Biochemical Industries, Inc.* v. *Jamestown Management Corp.*, 262 Ga. App. 770, 776, 586 S.E.2d 442 (2003); *State* v. *Sandoval-Tena*, 138 Idaho 908, 911, 71 P.3d 1055 (2003); *State* v. *Lackey*, 280 Kan. 190, 205, 120 P.3d 332 (2005), cert. denied, 547 U.S. 1056, 126 S. Ct. 1653, 164 L. Ed. 2d 399 (2006); *Martin*

others engage in de novo review;[9] and still others engage

v. *Commonwealth,* 170 S.W.3d 374, 382 (Ky. 2005); *Menard* v. *Holland,* 919 So. 2d 810, 815 (La. App. 2005); *Commonwealth* v. *Lampron,* 441 Mass. 265, 271, 806 N.E.2d 72 (2004); *People* v. *Geno,* 261 Mich. App. 624, 631–32, 683 N.W.2d 687, appeal denied, 471 Mich. 921, 688 N.W.2d 829 (2004); *State* v. *Martin,* 695 N.W.2d 578, 583 (Minn. 2005); *Hobgood* v. *State,* 926 So. 2d 847, 853 (Miss. 2006), cert. denied, 549 U.S. 1118, 127 S. Ct. 928, 166 L. Ed. 2d 714 (2007); *State* v. *Justus,* 205 S.W.3d 872, 878 (Mo. 2006); *State* v. *Cameron,* 326 Mont. 51, 54, 106 P.3d 1189 (2005); *Crowley* v. *State,* 120 Nev. 30, 34, 83 P.3d 282 (2004); *State* v. *Beltran,* 153 N.H. 643, 650, 904 A.2d 709 (2006); *State* v. *Torres,* 183 N.J. 554, 567, 874 A.2d 1084 (2005); *State* v. *Dedman,* 136 N.M. 561, 567, 102 P.3d 628 (2004); *People* v. *Carroll,* 95 N.Y.2d 375, 385, 740 N.E.2d 1084, 718 N.Y.S.2d 10 (2000); *State* v. *Brigman,* 178 N.C. App. 78, 87, 632 S.E.2d 498, review denied, 360 N.C. 650, 636 S.E.2d 813 (2006); *State* v. *Krull,* 693 N.W.2d 631, 635 (N.D. 2005); *Beard* v. *Meridia Huron Hospital,* 106 Ohio St. 3d 237, 239–40, 834 N.E.2d 323 (2005); *In re J.D.H.,* 130 P.3d 245, 247 (Okla. 2006); *Commonwealth* v. *Mitchell,* 588 Pa. 19, 56, 902 A.2d 430 (2006), cert. denied, 549 U.S. 1169, 127 S. Ct. 1126, 166 L. Ed. 2d 897 (2007); *Perry* v. *Alessi,* 890 A.2d 463, 470 (R.I. 2006); *Floyd* v. *Floyd,* 365 S.C. 56, 81–82, 615 S.E.2d 465 (App. 2005); *State* v. *Herrmann,* 679 N.W.2d 503, 507 (S.D. 2004); *State* v. *Saylor,* 117 S.W.3d 239, 247–48 (Tenn. 2003), cert. denied, 540 U.S. 1208, 124 S. Ct. 1483, 158 L. Ed. 2d 133 (2004); *Zuliani* v. *State,* 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *State* v. *Voorheis,* 176 Vt. 265, 272, 844 A.2d 794 (2004); *State* v. *Dennis,* 216 W. Va. 331, 349–50, 607 S.E.2d 437 (2004); *State* v. *Manuel,* 281 Wis. 2d 554, 568–69, 697 N.W.2d 811 (2005); *Boykin* v. *State,* 105 P.3d 481, 482–83 (Wyo. 2005).

[9] Four jurisdictions, specifically the District of Columbia, Iowa, Maryland and Oregon, review hearsay issues, including the application of hearsay exceptions, as questions of law subject to de novo review. See *Zacarias* v. *United States,* 884 A.2d 83, 90 (D.C. 2005) ("[w]hether a particular statement is inadmissible as hearsay or admissible under an exception to the hearsay rule, however, is a question of law that we review de novo" [internal quotation marks omitted]); *State* v. *Newell,* 710 N.W.2d 6, 18 (Iowa 2006) (discussing other evidentiary issues subject to discretionary review, but stating that "[w]e review the defendant's hearsay claims for errors at law"); *Bernadyn* v. *State,* 390 Md. 1, 7–8, 887 A.2d 602 (2005) ("We review rulings on the admissibility of evidence ordinarily on an abuse of discretion standard. . . . Review of the admissibility of evidence which is hearsay is different. Hearsay, under our rules, *must* be excluded as evidence at trial, unless it falls within an exception to the hearsay rule excluding such evidence or is permitted by applicable constitutional provisions or statutes. . . . Thus, a circuit court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. Whether evidence is hearsay is an issue of law reviewed de novo." [Citations omitted; emphasis in original; internal quotation marks omitted.]); *State* v. *Cook,* 340 Or. 530, 537, 135 P.3d 260 (2006) (An appeals court reviewing a trial court's ruling under the penal

in a "hybrid" scope of review dependent on whether the hearsay rule or an exception to that rule is under consideration.[10]

We recognize the superficial appeal of the aforementioned bright line rules in their ease of application, but conclude that such rules overlook the fundamentally complex nature of evidentiary rulings. We therefore decline to adopt a categorical de novo or abuse of discretion standard because application of either standard will afford unwarranted deference in some cases and unwarranted interference in others, irrespective of the differing nature of inquiries at issue depending on the type of statement and the rule of evidence implicated. Although the "hybrid" approach in our view correctly recognizes that not all claims require the same degree of scrutiny, its categorical distinctions fail to recognize that, even within the hearsay exceptions, a more nuanced approach is demanded. Rather than invoke a rule based strictly on a category, we conclude that the better approach is one adopted by other jurisdictions in which they examine the nature of the ruling at issue in the context of the issues in the case. See, e.g., *United States* v. *Washington*, 462 F.3d 1124, 1135 (9th Cir. 2006); *United States* v. *Price*, 458 F.3d 202, 205 (3d Cir. 2006), cert. denied, 549 U.S. 1147, 127 S. Ct. 1014, 166 L. Ed. 2d 764 (2007); *State* v. *Haili*, 103 Haw. 89, 99–100, 79 P.3d 1263 (2003); *In re A.B.*, 308

interest exception "applies a two-part standard of review to a trial court evidentiary ruling that a statement fits within an exception to the hearsay rule. . . . The court will uphold the trial court's preliminary factual determinations if any evidence in the record supports them. . . . However, the court reviews the trial court's ultimate legal conclusion, as to whether the hearsay statement is admissible under an exception to the hearsay rule, to determine if the trial court made an error of law." [Citations omitted.]).

[10] See, e.g., *K.V.* v. *State*, 832 So. 2d 264, 265–66 (Fla. App. 2002) ("The abuse of discretion standard applies in cases where the proponent of the evidence is seeking to have it come in under a hearsay exception. . . . However, the question of whether evidence falls within the statutory definition of hearsay is a question of law." [Citations omitted.]).

Ill. App. 3d 227, 234, 719 N.E.2d 348 (1999); *State* v. *White*, 804 A.2d 1146, 1150 (Me. 2002); *Wayment* v. *Clear Channel Broadcasting, Inc.*, 116 P.3d 271, 286 (Utah 2005); *State* v. *DeVincentis*, 150 Wash. 2d 11, 17, 74 P.3d 119 (2003). Accordingly, we conclude that the appropriate standard of review is best determined, not as a strict bright line rule, but as one driven by the specific nature of the claim.

To the extent a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no "judgment call" by the trial court, and the trial court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. See, e.g., *State* v. *Aaron L.*, 272 Conn. 798, 811 n.19, 865 A.2d 1135 (2005) (wherein issue was whether young child's statement to her mother regarding sexual abuse fell within scope of medical treatment exception when mother thereafter relayed statement to child's physician, court applied de novo review of "whether the trial court properly ruled that the statement at issue fell within the medical treatment exception to the hearsay rule, a pure question of law"); see also *State* v. *George J.*, 280 Conn. 551, 592, 910 A.2d 931 (2006) (whether admission of statement violated constitutional mandates of *Crawford* v. *Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 [2004], raised question of law over which court exercises plenary review), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007).

We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion. See, e.g., *State* v.

*Patterson*, 276 Conn. 452, 485–86, 886 A.2d 777 (2005) (trial court did not abuse its discretion in admitting under state of mind hearsay exception victim's statement evidencing fear of defendant as evidence of defendant's motive to kill victim because there was sufficient corroborative evidence to render that inference nonspeculative). In other words, only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought. For example, whether a statement is truly spontaneous as to fall within the spontaneous utterance exception will be reviewed with the utmost deference to the trial court's determination. Similarly, appellate courts will defer to the trial court's determinations on issues dictated by the exercise of discretion, fact finding, or credibility assessments. A paradigmatic example of this distinction would be a trial court's conclusion that a hearsay statement bears the requisite indicia of trustworthiness and reliability necessary for admission under the residual exception to the hearsay rule, which would be reviewed for an abuse of discretion. See, e.g., *State* v. *Skakel*, 276 Conn. 633, 729, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006). By contrast, the question of whether the trial court properly could have admitted that statement under the residual exception if the admission of that type of statement *expressly was barred* under another hearsay exception would present a question of law over which the appellate courts exercise plenary review.

Thus, we concur with the approach taken by those jurisdictions that have recognized that the function performed by the trial court in issuing its ruling should dictate the scope of review. See, e.g., *United States*

v. *Washington*, supra, 462 F.3d 1135 (whether District Court correctly construed hearsay rule is question of law subject to de novo review; whether statement consistent with declarant's testimony offered to rebut recent fabrication was made before alleged motive to fabricate arose is subject to abuse of discretion); *United States* v. *Price*, supra, 458 F.3d 205 (whether statement is hearsay is legal question subject to plenary review; whether statement satisfies relevant requirements for hearsay exception is subject to review for abuse of discretion); *State* v. *Haili*, supra, 103 Haw. 99–100 (court engages in de novo review of hearsay questions, unless nature of issue requires discretionary "judgment call" by trial court, such as applicability of residual and recent perception exceptions to hearsay rule); *In re A.B.*, supra, 308 Ill. App. 3d 234 ("[A] trial court's determination that a particular statement is or is not hearsay [either under the common law or pursuant to statute] is a question of law because it does not involve the exercise of discretion, fact finding, or credibility assessments. . . . Only after a trial court has made the legal determination that a particular statement is or is not hearsay is it vested with the discretion to admit or bar the evidence . . . based upon relevancy, prejudice, or other legally appropriate grounds." [Citations omitted.]); *State* v. *Cornhuskers Motor Lines*, 854 A.2d 189, 192 (Me. 2004) (applying abuse of discretion standard to review application of party opponent exception to allegedly falsified truck logs); *State* v. *White*, supra, 804 A.2d 1150 (determining whether identification statement made to state trooper was for truth of matter asserted and stating that "[a] trial court's decision to admit alleged hearsay is a question of law, which we review de novo" [internal quotation marks omitted]); *Wayment* v. *Clear Channel Broadcasting, Inc.*, supra, 116 P.3d 286 ("Whether proffered evidence meets the definition of hearsay in Utah Rule of Evidence 801 is

a question of law, reviewed for correctness. . . . Nevertheless, because application of the hearsay rules in a specific case is so highly fact-dependent, a [D]istrict [C]ourt's conclusions on such issues are entitled to some measure of deference." [Citation omitted.]); *State* v. *DeVincentis*, supra, 150 Wash. 2d 17 (interpretation of rule of evidence is question of law, but application of that interpreted rule of evidence is discretionary by trial court).

## II

### A

We begin with the defendant's claim that the statement was not hearsay because it was not offered to prove the truth of the matter asserted therein, but only as circumstantial proof of the victim's state of mind. We will not reach this claim because it runs afoul of the procedures delineating the limited reviewability of claims in certified appeals.

It is well settled that, in a certified appeal, "the focus of our review is not the actions of the trial court, but the actions of the Appellate Court. We do not hear the appeal de novo. The only questions that we need consider are those squarely raised by the petition for certification, and we will ordinarily consider these issues in the form in which they have been framed in the Appellate Court." *State* v. *Torrence*, 196 Conn. 430, 433, 493 A.2d 865 (1985); accord *State* v. *Nunes*, 260 Conn. 649, 658, 800 A.2d 1160 (2002) ("on a certified appeal, our focus is on the judgment of the Appellate Court . . . and we ordinarily do not review claims not raised therein" [citation omitted]); see also *State* v. *Torrence*, supra, 434 n.5 ("under extraordinary circumstances, not present here, we may review matters not raised before the Appellate Court and resolve issues not determined by the Appellate Court").

Although it appears that the defendant properly may have raised the nonhearsay argument initially before the *trial* court in accordance with Practice Book § 5-5,[11] he subsequently failed to mention that claim in his brief to the Appellate Court, which focused solely on his argument that the statement was hearsay offered to prove the truth of the matter asserted, namely, that the victim had fabricated the accusations against the defendant, but was admissible pursuant to the state of mind exception.[12] Thus, the Appellate Court's opinion

[11] Specifically, the defendant argued that "[t]he first way is I would claim that it is an out-of-court statement, not hearsay if it's offered to illustrate circumstantially the declarant's then existing state of mind rather than the truth of the matter asserted. The state of mind, my contention being, she was aware of the fact the accusations were fabricated." The trial court's ruling, rendered after taking the matter under advisement during a recess, addresses only the hearsay exception, concluding that "state of mind exceptions come in as to present mind for future or past acts. This would be argued as to a past act, if we can interpret it being a past act. Case law is somewhat discouraging, if I can use that term. They discourage the use of state of mind exception for past act. The court also feels it doesn't fit appropriately within the state of mind exception. So, on that basis, the court doesn't agree it's a state of mind exception." The defendant did not ask for any further rulings on the ground of whether the statement was itself nonhearsay. Thus, because the trial court did not rule on the nonhearsay argument, the record is in any event inadequate for our review of this evidentiary issue. See, e.g., *Grimm* v. *Grimm*, 276 Conn. 377, 388–89, 886 A.2d 391 (2005) ("As is always the case, the [appellant], here the [defendant], bear[s] the burden of providing a reviewing court with an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter. . . . In the absence of any such attempts, we decline to review this issue." [Citations omitted; internal quotation marks omitted.]), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006).

[12] In his briefing of this claim in the Appellate Court, after discussing the proceedings before the trial court, the defendant limited his analysis as follows: "The judge should have left it for the jury to decide the meaning of the [victim's] words, which would have cast light on her state of mind regarding the defendant within a day of the alleged sexual assault. The defendant in this case properly relied on Connecticut Code of Evidence § 8-3 (4), which allows for the admission of 'a statement of the declarant's then-existing mental or emotional condition . . . .' The statement was not, as

addressed only the exception to the hearsay rule, and made no mention of any claim that the statement was not hearsay. See *State* v. *Saucier*, supra, 90 Conn. App. 144–47. Indeed, the defendant's petition for certification is drafted similarly. See footnote 3 of this opinion. We, therefore, decline to reach the defendant's claim that the statement was not hearsay because he abandoned it by failing to mention it in his brief to the Appellate Court. An unmentioned claim is, by definition, inadequately briefed, and one that is "generally . . . considered abandoned. . . . Moreover, a claim that has been abandoned during the initial appeal to the Appellate Court cannot subsequently be resurrected by the taking of a certified appeal to this court." (Citation omitted.) *Grimm* v. *Grimm*, 276 Conn. 377, 393, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). Accordingly, we now turn to the defendant's claim that the Appellate Court improperly affirmed the trial court's determination that the statement was inadmissible under the state of mind hearsay exception, § 8-3 (4) of the Connecticut Code of Evidence.

## B

"An out-of-court statement offered to establish the truth of the matter asserted is hearsay. . . . As a general rule, such hearsay statements are inadmissible unless they fall within a recognized exception to the hearsay rule." (Citations omitted; internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 254, 856 A.2d 917 (2004). As we previously have discussed, the only hearsay exception relevant in this appeal is § 8-3 (4) of the Connecticut Code of Evidence, which renders admissible "[a] statement of the declarant's

the trial court may have thought, 'a statement of memory or belief to prove the fact remembered or believed' under the rule." We note that the defendant did not provide any case citations in this section of his Appellate Court brief to develop the distinction between a statement that is not hearsay, and a hearsay statement subject to an exception.

then-existing mental or emotional condition, *including a statement indicating a present intention to do a particular act in the immediate future, provided that the statement* is a natural expression of the condition and *is not a statement of memory or belief to prove the fact remembered or believed.*"[13] (Emphasis added.)

---

[13] The commentary to § 8-3 (4) of the Connecticut Code of Evidence provides: "Section 8-3 (4) embodies what is frequently referred to as the 'state-of-mind' exception to the hearsay rule. See, e.g., *State* v. *Periere*, 186 Conn. 599, 605–606, 442 A.2d 1345 (1982).

"The exception allows the admission of a declarant's statement describing his or her then-existing mental or emotional condition when the declarant's mental or emotional condition is a factual issue in the case. E.g., [id.], 606–607 (to show declarant's fear); *Kearney* v. *Farrell*, 28 Conn. 317, 320–21 (1859) (to show declarant's 'mental feeling'). Only statements describing then-existing mental or emotional condition, i.e., that existing when the statement is made, are admissible.

"The exception also covers a declarant's statement of present intention to perform a subsequent act as an inference that the subsequent act actually occurred. E.g., *State* v. *Rinaldi*, 220 Conn. 345, 358 n.7, 599 A.2d 1 (1991); *State* v. *Santangelo*, 205 Conn. 578, 592, 534 A.2d 1175 (1987); *State* v. *Journey*, 115 Conn. 344, 351, 161 A.2d 515 (1932). The inference drawn from the statement of present intention that the act actually occurred is a matter of relevancy rather than a hearsay concern.

"When a statement describes the declarant's intention to do a future act in concert with another person, e.g., 'I am going to meet Ralph at the store at ten,' the case law does not prohibit admissibility. See *State* v. *Santangelo*, supra, 205 Conn. 592. But the declaration can be admitted only to prove the declarant's subsequent conduct, not to show what the other person ultimately did. *State* v. *Perelli*, 125 Conn. 321, 325, 5 A.2d 705 (1939). Thus, in the example above, the declarant's statement could be used to infer that the declarant actually did go to meet Ralph at the store at ten, but not to show that Ralph went to the store at ten to meet the declarant.

"Placement of Section 8-3 (4) in the 'availability of the declarant immaterial' category of hearsay exceptions confirms that the admissibility of statements of present intention to show future acts is not conditioned on any requirement that the declarant be unavailable. See *State* v. *Santangelo*, supra, 205 Conn. 592 (dictum suggesting that declarant's unavailability is precondition to admissibility).

"While statements of present intention looking forward to the doing of some future act are admissible under the exception, backward looking statements of memory or belief offered to prove the act or event remembered or believed are inadmissible. See *Wade* v. *Yale University*, 129 Conn. 615, 618–19, 30 A.2d 545 (1943). But see *State* v. *Santangelo*, supra, 205 Conn. 592–93. As the advisory committee note to the corresponding federal rule

See also C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.19.6, p. 631 ("declarations of present state of mind are inadmissible to prove memory or belief that the declarant has performed an act in the past, when such declaration is offered as proof of the performance of that act"). "[F]orward-looking statements of intention are admitted while backward-looking statements of memory or belief are excluded because the former do not present the classic hearsay dangers of memory and narration. The weakness inherent in forward-looking statements—the uncertainty that the intention will be carried out—may lead to exclusion, but this is under the relevancy doctrine rather than hearsay analysis." 2 C. McCormick, Evidence (6th Ed. 2006) § 276, p. 279.

The issue, therefore, in the present case is whether the trial court properly determined that the victim's statement, in the context of the facts of this case, was a statement of her present state of mind, a permissible use, or a statement of memory or belief regarding a past act, an impermissible use. Because there is no question that the trial court properly understood the law at issue that the state of mind exception does not apply to the latter, the interpretation of the victim's statement presents an issue that we review subject to an abuse of discretion standard.

suggests, '[t]he exclusion of "statements of memory or belief to prove the fact remembered or believed" is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the state of mind.' Fed. R. Evid. 803 (3) advisory committee note, citing Shepard v. United States, 290 U.S. 96, 54 S. Ct. 22, 78 L. Ed. 196 (1933). For cases dealing with the admissibility of statements of memory or belief in will cases, see Spencer's Appeal, 77 Conn. 638, 643, 60 A. 289 (1905); Vivian Appeal, 74 Conn. 257, 260–62, 50 A. 797 (1901); Comstock v. Hadlyme Ecclesiastical Society, 8 Conn. 254, 263–64 (1830). Cf. Babcock v. Johnson, 127 Conn. 643, 644, 19 A.2d 416 (1941) (statements admissible only as circumstantial evidence of state of mind and not for truth of matter asserted); In re Johnson's Will, 40 Conn. 587, 588 (1873) (same)."

Although neither the parties' briefs nor the court's independent research has yielded a case directly on point involving a statement by a victim after an alleged assault indicating a potential fabrication, we find instructive a review of the existing case law on the limits of this hearsay exception. The seminal case is the United States Supreme Court decision in *Shepard* v. *United States*, 290 U.S. 96, 54 S. Ct. 22, 78 L. Ed. 196 (1933), which has been incorporated into the commentary to our Code of Evidence. See C. Tait, supra, § 8.19.6, p. 632; see also footnote 13 of this opinion. In that case, the Supreme Court concluded that the victim's statement to her nurse, " 'Dr. Shepard has poisoned me,' " was inadmissible under the state of mind exception.[14] *Shepard* v. *United States*, supra, 103–104. The court characterized this statement as used not for proof of the victim's "present thoughts and feelings, or even her thoughts and feelings in times past," but, rather, "as proof of an act committed by some one else, as evidence that she was dying of poison given by her husband. This fact, if fact it was, the [g]overnment was free to prove, but not by hearsay declarations." Id., 104; see also id. ("[t]he reverberating clang of those accusatory words would drown all weaker sounds"). The court stated that "[t]here are times when a state of mind, if relevant, may be proved by contemporaneous declarations of feeling or intent. . . . Thus, in proceedings for the probate of a will, where the issue is undue influence, the declarations of a testator are competent to prove his feelings for his relatives, but are incompe-

---

[14] The United States Supreme Court first concluded that the statement was inadmissible as a dying declaration because the victim's condition when it was made did not "[give] fair support to the conclusion that hope had then been lost," despite her fear that she was going to die, because "[f]ear or even belief that illness will end in death will not avail of itself to make a dying declaration. There must be a settled hopeless expectation . . . that death is near at hand, and what is said must have been spoken in the hush of its impending presence." (Citation omitted; internal quotation marks omitted.) *Shepard* v. *United States*, supra, 290 U.S. 99–100.

tent as evidence of his conduct or of theirs. . . . In suits for the alienation of affections, letters passing between the spouses are admissible in aid of a like purpose . . . . In damage suits for personal injuries, declarations by the patient to bystanders or physicians are evidence of sufferings or symptoms . . . but are not received to prove the acts, the external circumstances, through which the injuries came about. . . . Even statements of past sufferings or symptoms are generally excluded . . . though an exception is at times allowed when they are made to a physician. . . . So also in suits upon insurance policies, declarations by an insured that he intends to go upon a journey with another, may be evidence of a state of mind lending probability to the conclusion that the purpose was fulfilled. . . . The ruling in [*Mutual Life Ins. Co.* v. *Hillmon*, 145 U.S. 285, 12 S. Ct. 909, 36 L. Ed. 706 (1892)] marks the high water line beyond which courts have been unwilling to go. It has developed a substantial body of criticism and commentary. Declarations of intention, casting light upon the future, have been sharply distinguished from declarations of memory, pointing backwards to the past. There would be an end, or nearly that, to the rule against hearsay if the distinction were ignored." (Citations omitted.) *Shepard* v. *United States*, supra, 104–106. In the case before it, the Supreme Court concluded that the victim's statement "faced backward and not forward. This at least it did in its most obvious implications. What is even more important, it spoke to a past act, and more than that, to an act by some one not the speaker. Other tendency, if it had any, was a filament too fine to be disentangled by a jury." Id., 106. Accordingly, the Supreme Court reversed the defendant's murder conviction and remanded the case for a new trial. Id.

Our own case law is similarly illustrative in its support of the Appellate Court's decision. In *State* v. *Freeney*,

supra, 228 Conn. 594, we concluded that the trial court properly had sustained the state's objections and excluded "testimony that, after he was apprehended, the defendant waived his *Miranda*[15] rights and admitted that he struck the victim but denied kidnapping or participating in sexual assaults upon her." We concluded that "[t]he defendant's statements after his arrest are inadmissible hearsay and may not be offered to demonstrate his state of mind before his arrest. Statements by an accused 'after the act, stating the past intent or motive at the time of the act' are inadmissible under the state of mind exception to the hearsay rule. . . . In the present case, the defendant sought to introduce postarrest statements that he had committed an assault but not a kidnapping or a sexual assault to indicate that he had fled from the police because he had struck the victim. Such statements do not fall within the state of mind exception to the hearsay rule." (Citations omitted.) Id., 595; see also *State* v. *Adams*, 52 Conn. App. 643, 656–57, 727 A.2d 780 (1999) (trial court properly excluded, under both state of mind and residual exceptions, statements by defendant to police that he had stabbed victim in self-defense), aff'd, 252 Conn. 752, 748 A.2d 872, cert. denied, 531 U.S. 876, 121 S. Ct. 182, 148 L. Ed. 2d 126 (2000).[16] Finally, in *Wade* v. *Yale*

[15] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[16] The defendant claims that *State* v. *Freeney*, supra, 228 Conn. 582, and *State* v. *Adams*, supra, 52 Conn. App. 643, are distinguishable because the statements in those cases were exculpatory statements by each of those defendants, and therefore, inherently suspect "because the defendant has reason to misrepresent his intent at the time in order to avoid prosecution," whereas the victim's statement in this case "reflected adversely on the credibility of her allegations in the case. The [victim] had no reason to misrepresent her mental state at the time the statement was made, and there is no reason to believe that she would misrepresent her mental state in a way that undermined her allegations against the defendant." We disagree with the defendant because these arguments go to the weight and persuasive value of the victim's statement in this case as compared to the defendants' statements in *Freeney* and *Adams*, rather than to the admissibility of the victim's statement under the temporally limited scope of the state of mind exception.

*University*, 129 Conn. 615, 616–17, 30 A.2d 545 (1943), a civil case wherein the plaintiff sought damages based on his fall on a dark staircase, this court concluded that the trial court improperly had admitted testimony by the plaintiff's sister, who had witnessed the accident, that another woman had said: " '[I] noticed the light was out earlier in the evening. I tried to replace the bulb, but the man who had the keys to the supply room was out of the building.' " Id., 617. The court concluded that the woman's statements were not admitted properly under the state of mind exception because they were "not offered to establish her knowledge at the time they were made, for this would not help the plaintiff, but to establish the knowledge *she had in the past* in order to show notice to the landlord."[17] (Emphasis added.) Id., 619.

We also have reviewed numerous sister state cases, and we find most persuasive *Conyers* v. *State*, 354 Md. 132, 158–60, 729 A.2d 910, cert. denied, 528 U.S. 910, 120 S. Ct. 258, 145 L. Ed. 2d 216 (1999).[18] In *Conyers*,

---

[17] This court also concluded that the statement was inadmissible as an admission, for lack of a showing of agency, or as a spontaneous utterance. See *Wade* v. *Yale University*, supra, 129 Conn. 618–19.

[18] Most of the sister state cases that we have found involving application of the state of mind exception to statements by a crime victim arise from statements offered to show that particular victim's fear of the defendant as a result of previous events. See, e.g., *People* v. *Madson*, 638 P.2d 18, 29–30 (Colo. 1981) (statements by victim expressing her fear of defendant inadmissible when self-defense and suicide were not at issue in case); *Moseley* v. *Commonwealth*, 960 S.W.2d 460, 461–62 (Ky. 1997) (statements by deceased victim that she previously had been abused by defendant husband, who was accused of killing her, were not subject to state of mind exception because they were offered to prove fact that already had happened); *State* v. *Williams*, 395 A.2d 1158, 1163–64 (Me. 1978) (victim's previous statement to friend that she was afraid because her assailant was chasing her inadmissible "for such fear is tantamount to remembering the prior conduct of [assailant] threatening her with harm"); *Commonwealth* v. *Zagranski*, 408 Mass. 278, 282–83, 558 N.E.2d 933 (1990) (murder victim's statements to his attorney about evolution of transaction of planned sale of his land to defendant were hearsay inadmissible under state of mind exception, unless they pertained to victim's future intentions); *State* v. *Bell*, 950 S.W.2d 482, 483–84 (Mo. 1997) (hearsay statements by murder victim of prior domestic assaults were

the Maryland Court of Appeals affirmed the trial court's exclusion of testimony that the defendant's cellmate, who had testified against him, had stated to another inmate that he "needed to take care of number one first," in connection with allegations that he had searched other inmates' cells for information about their cases. Id., 154–55. The court concluded that the trial court properly had excluded that statement because it did not fit under the state of mind exception to the hearsay rule, as the inmate's "statement about his self-interest is not proof that he engaged in any specific action for the purpose of 'taking care of number one first.' Under the state of mind exception to the hearsay rule, 'a statement of the declarant's then existing state of mind is admissible to prove the truth of the matter asserted, except that it is generally inadmissible . . . to prove a fact [such as an action] which purportedly happened *before the statement was made.'* 6 [L.] McLain, Maryland Evidence § 803 (3).1, [pp.] 356–57 . . . . In the instant case, we cannot make the inferential leap that because [the cellmate] allegedly said to [another inmate] that he 'was looking out for number one,' that he actually did rifle through other inmates' case documents, and in particular [the defendant's] documents, in order to cut a deal with the [s]tate." (Emphasis in original.) *Conyers* v. *State,* supra, 160.

We find *Conyers* to be instructive because the inmate's statement in that case about " 'taking care of number one' "; id.; is as ambiguous with respect to any prior acts as was the victim's ambiguous statement to

inadmissible because they did "no more than recount past events"); *Glover* v. *State,* 102 S.W.3d 754, 762–63 (Tex. App. 2002) (Noting that child sexual assault victim's statements to her mother went "well beyond [her] then-existing emotional state during the confrontation with her mother. . . . The testimony of [the victim's mother], relating statements made by her daughter and seeking to establish the truth of facts remembered regarding past events, is inadmissible under the state of mind exception to the hearsay rule.").

Hoban in the present case.[19] Moreover, *Conyers* is an application of principles that are consistent with Connecticut's law of evidence.[20] Thus, even if we were to assume that the victim's statement to Hoban is some evidence that she had fabricated the charges against the defendant, we conclude that the Appellate Court properly affirmed the trial court's determination that the statement was inadmissible hearsay.[21] We take par-

[19] In support of his claim that the victim's statement in the present case was offered to indicate her "present state of mind at the time she made the statement," the defendant relies on *State* v. *Flett*, 40 Wash. App. 277, 287, 699 P.2d 774 (1985), for the proposition that "[t]he fact that the statement is in the past tense does not necessarily mean that it indicates a past mental state." We find the defendant's reliance on *Flett* to be misplaced and overbroad. In that case, a sexual assault victim had told her daughter, seven hours after the incident, that she had been raped, and told her son at least two and one-half hours after the incident, "Something upset me . . . did you take the bastard home?" (Internal quotation marks omitted.) Id., 286. The court concluded that the trial court properly had admitted her statement to her daughter as an excited utterance, and that the statement that " '[s]omething upset me' " was admissible under the state of mind exception because the circumstances of the case indicated that it referred to the victim's then-existing mental state; "the fact, by inference, it refers to a past event does not take it out of the scope of the rule, since it is reasonable to believe the condition existed at the time of the utterance . . . ." Id., 287–88. *Flett* is distinguishable from the present case because the statement at issue therein unambiguously pertained to an emotion; the victim in *Flett* specifically complained of being " 'upset,' " an expression of emotion that was directly relevant to the issue of consent. Moreover, that statement took place during the middle of a continuum of disturbing events; specifically, the statement was made after she had been sexually assaulted, but before she saw the assailant's wife while at work the next morning. Id., 279.

[20] We note that the defendant relies on a line of older California cases espousing a broader view of the admissibility of statements pursuant to the state of mind exception, specifically, that, "[w]hen intent is a material element of a disputed fact, declarations of a decedent *made after as well as before* an alleged act that indicate the intent with which he performed the act are admissible in evidence as an exception to the hearsay rule, and it is immaterial that such declarations are self-serving." (Emphasis added.) *Whitlow* v. *Durst*, 20 Cal. 2d 523, 524, 127 P.2d 530 (1942). This approach is inconsistent with the temporal limitations on the admissibility of such statements contained in § 8-3 (4) of the Connecticut Code of Evidence.

[21] We also disagree with the defendant's reliance on *Haynam* v. *Laclede Electric Cooperative, Inc.*, 827 S.W.2d 200 (Mo. 1992). In that case, the plaintiffs, husband and wife, brought an action against the defendant electric company alleging wrongful termination of electric services. Id., 203–204.

ticular note of the ambiguous quality of the statement, and the fact that the trial court was required to grapple with categorizing it for purposes of determining its admissibility. Indeed, the victim's statement simply could have meant that she believed that her identification to the police of the defendant as her attacker would ensure that he would not be able to harm her again. Significantly, the more helpful the ambiguous statement is to the defendant, the more inadmissible it becomes under the law governing the state of mind exception. Specifically, if " 'I got Richie' " is interpreted as a statement of the act of fabrication, the more it becomes a

They had pleaded their action based upon "intentional conduct that was 'malicious, wanton and willful,' " and sought both actual and punitive damages. Id., 204. The plaintiffs and the electric company apparently had agreed to payment arrangements for a disputed bill for March of 1986, which would have given the plaintiffs until the end of May to pay the second part of that bill. Id. The electric company shut off the electricity before then, however, and the plaintiff wife spoke to the general manager of the electric company that same day. She testified that he said there was no log of those arrangements, and that the electric company would not turn the power back on until the bill was paid. When the plaintiff wife inquired and the general manager said that there was no one superior to him, the plaintiff wife then said, " 'Then you're God, and there's nobody else, you know, above that?' " Id. At that point, the manager replied, " 'That's right, lady.' " Id. The court concluded that "[a]lthough this conversation occurred some four hours after [the power company] had terminated the electric service, the jury was entitled to consider this evidence in determining [the general manager's] state of mind when he authorized the termination of the electrical service. State of mind is a continuing condition that may be proved by statements evidencing the state of mind either before or following the relevant point in time." Id., 204–205.

Even if we were to assume the continuity of states of mind, *Haynam* is distinguishable from the present case. The electric company's refusal to restore the power was a continuation of the conduct at issue, namely, the initial disconnection of the plaintiffs' power, whereas any fabrication in this case would have occurred on the preceding day. Moreover, in our view, the Missouri court mischaracterized the nature of the remarks; rather than hearsay subject to the state of mind exception, we view these comments as nonhearsay because they were not offered for the truth of the matter asserted, specifically, whether the power company manager is God. Rather, that remark more properly would be viewed as circumstantial evidence of the electric company's malice and wantonness.

narrative of past events and, therefore, inadmissible under the state of mind exception as a "look backward." Thus, the trial court properly concluded that the statement was one of past events, namely, that the victim had trumped up charges against the defendant, and therefore was inadmissible pursuant to the state of mind exception. Accordingly, the Appellate Court properly upheld the trial court's ruling on this point.

The judgment of the Appellate Court is affirmed.

In this opinion BORDEN, PALMER and VERTE-FEUILLE, Js., concurred.

NORCOTT, J., with whom ZARELLA and SULLIVAN, Js., join, concurring in part. I agree with and join the well reasoned analysis in part II of the majority opinion. I write separately, however, because I disagree in part with the standard of review discussion contained in part I of the majority opinion. In my view, the ambiguous statement that confronts us in this case—" 'I got Richie. I got him good.' "—which was made by the victim to an acquaintance in reference to the defendant, Richard Saucier, is a paradigmatic example of why we should review all purely evidentiary claims, including determinations of whether out-of-court statements are hearsay, solely for abuse of the trial court's discretion.[1]

---

[1] Like the majority, I note that the defendant, relying on the Appellate Court opinion in this case, claims that " '[w]hether evidence offered at trial is admissible pursuant to one of the exceptions to the hearsay rule presents a question of law' " subject to plenary review. See *State* v. *Saucier*, 90 Conn. App. 132, 144, 876 A.2d 572 (2005); *State* v. *Gonzalez*, 75 Conn. App. 364, 375, 815 A.2d 1261 (2003), rev'd on other grounds, 272 Conn. 515, 864 A.2d 847 (2005). I agree with the state's position that the Appellate Court should not have engaged in plenary review of the trial court's evidentiary ruling, and that the flaw in the Appellate Court's analysis stems from its reliance on its decision in *Gonzalez*, a decision that incorrectly cited this court's decision in *State* v. *Tillman*, 220 Conn. 487, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207, 112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992).

I begin with this court's decision in *State* v. *Tillman*, supra, 220 Conn. 487, which apparently formed the basis for the Appellate Court's conclusion that the trial court's hearsay ruling is a question of law subject to plenary

In part I of its opinion, the majority rejects what it calls a "categorical" or "bright line" approach to determining the standard of review applicable to evidentiary claims on appeal, noting that "application of either [the plenary or the abuse of discretion] standard will afford unwarranted deference in some cases and unwarranted interference in others, irrespective of the differing nature of inquiries at issue depending on the type of statement and the rule of evidence implicated." The majority adopts a "more nuanced approach" whereby it considers the "nature of the ruling at issue in the context of the issues in the case." It then concludes that "whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no 'judgment call' by the trial court, and the trial court has no discretion to admit hearsay in the absence of a provision providing for its admissibility."[2] This is where I part company from the majority.

---

review. See *State* v. *Saucier*, supra, 90 Conn. App. 144; *State* v. *Gonzalez*, supra, 75 Conn. App. 375. In my view, the Appellate Court's reliance in *Gonzalez* on *Tillman* was misplaced, as *Tillman* did not state that evidentiary issues, including the trial court's application of a hearsay exception, are themselves subject to plenary review. Rather, *Tillman* noted that the defendant in that case had raised claims that: "(1) the selection of jury panels was unconstitutionally discriminatory; (2) the trial court improperly instructed the jury on identification, consciousness of guilt, and the use of prior inconsistent statements; and (3) the trial court improperly ruled that the field notes of a police social worker were inadmissible as hearsay." *State* v. *Tillman*, supra, 491. With respect to the standard of review, *Tillman* referred to all of these issues and stated only that "[t]o *the extent that these claims are entitled to a plenary review*, we conclude that they do not establish the defendant's right to a new trial." (Emphasis added.) Id. Put differently, this court's decision in *Tillman* did not conclude specifically that evidentiary claims, and specifically hearsay rulings, are subject to plenary review. Thus, in my view, the Appellate Court's reliance in *Gonzalez* on *Tillman* for this proposition simply was mistaken, rendering that case and its progeny no longer good law on this point.

[2] The majority further states that "only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is

Although I agree with the majority's rather unremarkable proposition that we should examine the ruling at issue carefully to determine the appropriate standard of review,[3] unlike the majority, I view the appeal of "bright line rules" in this context as more than "superficial."[4] Indeed, until the majority's decision in this case,

subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." I agree that the trial court first should determine whether the proffered statement is hearsay before considering the applicability of any hearsay exceptions. Unlike the majority, however, I would evaluate *both* determinations under the abuse of discretion standard of review.

[3] I agree with the majority that we should not apply the abuse of discretion standard of review to *all* claims with an evidentiary genesis. More specifically, I agree that claims that present questions of law, such as constitutional issues or matters of interpreting the meaning or extent of the rules of evidence, are subject to plenary review. See *State* v. *George J.*, 280 Conn. 551, 592, 910 A.2d 931 (2006) ("The court's ruling as to the nonhearsay character of the evidence is reviewed under a deferential abuse of discretion standard. . . . The court's ruling that the admission of the report entry did not violate the constitutional mandates of *Crawford* [v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)], raises a question of law over which we exercise plenary review." [Citation omitted.]), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007); *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 599 n.7, 717 A.2d 713 (1998) ("whether establishing such a chain of custody is a predicate for admitting documents as business records under [General Statutes] § 52-180" is question of law, and "[b]ecause we review the trial court's interpretation of the statute, and the statute's applicability to the proffered documents, our review is plenary"); see also *State* v. *Aaron L.*, 272 Conn. 798, 811, 865 A.2d 1135 (2005) ("[u]nless an evidentiary ruling involves a clear misconception of the law, [t]he trial court has broad discretion in ruling on the admissibility . . . of evidence" [internal quotation marks omitted]).

[4] The majority purportedly eschews the adoption of bright line rules in this context, including the "hybrid" approach whereby the determination of whether a statement is hearsay is a question of law subject to plenary review, but whether the trial court properly applied the relevant hearsay exception is a discretionary ruling. See footnote 12 of this opinion. I disagree, however, with the majority's characterization of its approach as not categorical, and as dependent on "the nature of the ruling at issue in the context of the issues in the case." The majority clearly states that whether a statement may properly be classified as hearsay is a question of law subject to plenary review because it is a "[determination] about which reasonable minds may not differ," and that "only after a trial court has made the legal determination

it had been "axiomatic [in Connecticut][5] that [t]he trial

that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." In my view, the majority has, without saying so, adopted a bright line rule—albeit one I do not agree with—namely, the hybrid approach.

[5] As the majority's comprehensive research demonstrates, review of trial courts' evidentiary rulings for abuse of discretion similarly is well established in forty of our sister states and ten of the thirteen federal Circuit Courts of Appeals. See *United States* v. *Brown*, 441 F.3d 1330, 1359 (11th Cir. 2006), cert. denied, 549 U.S. 1182, 127 S. Ct. 1149, 166 L. Ed. 2d 998 (2007); *United States* v. *Washington*, 434 F.3d 7, 14 (1st Cir. 2006); *United States* v. *Brun*, 416 F.3d 703, 706 (8th Cir. 2005); *United States* v. *Dazey*, 403 F.3d 1147, 1165–66 (10th Cir. 2005); *United States* v. *Slaughter*, 386 F.3d 401, 403 (2d Cir. 2004); *United States* v. *Breland*, 356 F.3d 787, 792 (7th Cir.), cert. denied, 542 U.S. 944, 124 S. Ct. 2924, 159 L. Ed. 2d 825 (2004); *United States* v. *Alexander*, 331 F.3d 116, 121–22 (D.C. Cir. 2003); *United States* v. *Solis*, 299 F.3d 420, 443 (5th Cir.), cert. denied sub nom. *Mendez* v. *United States*, 537 U.S. 1060, 123 S. Ct. 640, 154 L. Ed. 2d 543 (2002); *United States* v. *Jackson*, 124 F.3d 607, 618 (4th Cir. 1997), cert. denied, 522 U.S. 1066, 118 S. Ct. 733, 139 L. Ed. 2d 670 (1998); *Kolmes* v. *World Fibers Corp.*, 107 F.3d 1534, 1542 (Fed. Cir. 1997); *Queen* v. *Belcher*, 888 So. 2d 472, 477 (Ala. 2003); *Wyatt* v. *State*, 981 P.2d 109, 112 (Alaska 1999); *State* v. *Montano*, 204 Ariz. 413, 426, 65 P.3d 61 (2003); *Dednam* v. *State*, 360 Ark. 240, 243, 200 S.W.3d 875 (2005); *People* v. *Guerra*, 37 Cal. 4th 1067, 1113, 129 P.3d 321, 40 Cal. Rptr. 3d 118 (2006), cert. denied, 549 U.S. 1182, 127 S. Ct. 1149, 166 L. Ed. 2d 998 (2007); *In re Water Rights of Central Colorado Water Conservancy District* v. *Greeley*, 147 P.3d 9, 17 n.7 (Colo. 2006); *Walton* v. *State*, 821 A.2d 871, 878 (Del. 2003); *International Biochemical Industries, Inc.* v. *Jamestown Management Corp.*, 262 Ga. App. 770, 776, 586 S.E.2d 442 (2003); *State* v. *Sandoval-Tena*, 138 Idaho 908, 911, 71 P.3d 1055 (2003); *Stahl* v. *State*, 686 N.E.2d 89, 91 (Ind. 1997); *State* v. *Lackey*, 280 Kan. 190, 205, 120 P.3d 332 (2005), cert. denied, 547 U.S. 1056, 126 S. Ct. 1653, 164 L. Ed. 2d 399 (2006); *Martin* v. *Commonwealth*, 170 S.W.3d 374, 382 (Ky. 2005); *Menard* v. *Holland*, 919 So. 2d 810, 815 (La. App. 2005); *Commonwealth* v. *Lampron*, 441 Mass. 265, 271, 806 N.E.2d 72 (2004); *People* v. *Geno*, 261 Mich. App. 624, 631–32, 683 N.W.2d 687, appeal denied, 471 Mich. 921, 688 N.W.2d 829 (2004); *State* v. *Martin*, 695 N.W.2d 578, 583 (Minn. 2005); *Hobgood* v. *State*, 926 So. 2d 847, 853 (Miss. 2006), cert. denied, 549 U.S. 1118, 127 S. Ct. 928, 166 L. Ed. 2d 714 (2007); *State* v. *Justus*, 205 S.W.3d 872, 878 (Mo. 2006); *State* v. *Cameron*, 326 Mont. 51, 54, 106 P.3d 1189 (2005); *Crowley* v. *State*, 120 Nev. 30, 34, 83 P.3d 282 (2004); *State* v. *Beltran*, 153 N.H. 643, 650, 904 A.2d 709 (2006); *State* v. *Torres*, 183 N.J. 554, 567, 874 A.2d 1084 (2005); *State* v. *Dedman*, 136 N.M. 561, 567, 102 P.3d 628 (2004); *People* v. *Carroll*, 95 N.Y.2d 375, 385, 740 N.E.2d 1084, 718 N.Y.S.2d 10 (2000); *State* v. *Brigman*, 178

court's ruling on the admissibility of evidence is entitled
to great deference. . . . In this regard, the trial court
is vested with wide discretion in determining the admis-
sibility of evidence, including issues of relevance and
the scope of cross-examination. . . . Accordingly,
[t]he trial court's ruling on evidentiary matters will be
overturned only upon a showing of a clear abuse of the
court's discretion. . . . In determining whether there
has been an abuse of discretion, every reasonable pre-
sumption should be made in favor of the correctness
of the trial court's ruling, and we will upset that ruling
only for a manifest abuse of discretion. . . . This defer-
ential standard is [generally] applicable to evidentiary
questions involving hearsay."[6] (Internal quotation
marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 406–
407, 902 A.2d 1044 (2006) (whether statements on
answering machine tape were hearsay when offered to

N.C. App. 78, 87, 632 S.E.2d 498, review denied, 360 N.C. 650, 636 S.E.2d
813 (2006); *State* v. *Krull*, 693 N.W.2d 631, 635 (N.D. 2005); *Beard* v. *Meridia
Huron Hospital*, 106 Ohio St. 3d 237, 239–40, 834 N.E.2d 323 (2005); *In re
J.D.H.*, 130 P.3d 245, 247 (Okla. 2006); *Commonwealth* v. *Mitchell*, 588 Pa.
19, 56, 902 A.2d 430 (2006), cert. denied, 549 U.S. 1169, 127 S. Ct. 1126, 166
L. Ed. 2d 897 (2007); *Perry* v. *Alessi*, 890 A.2d 463, 470 (R.I. 2006); *Floyd*
v. *Floyd*, 365 S.C. 56, 81–82, 615 S.E.2d 465 (App. 2005); *State* v. *Herrmann*,
679 N.W.2d 503, 507 (S.D. 2004); *State* v. *Saylor*, 117 S.W.3d 239, 247–48
(Tenn. 2003), cert. denied, 540 U.S. 1208, 124 S. Ct. 1483, 158 L. Ed. 2d 133
(2004); *Zuliani* v. *State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *State*
v. *Voorheis*, 176 Vt. 265, 272, 844 A.2d 794 (2004); *Twine* v. *Commonwealth*,
48 Va. App. 224, 230, 629 S.E.2d 714 (2006); *State* v. *DeVincentis*, 150 Wash.
2d 11, 17, 74 P.3d 119 (2003); *State* v. *Larry M.*, 215 W. Va. 358, 363, 599
S.E.2d 581 (2004); *State* v. *Manuel*, 281 Wis. 2d 554, 568–69, 697 N.W.2d 811
(2005); *Boykin* v. *State*, 105 P.3d 481, 482–83 (Wyo. 2005).

[6] I also believe that the existence of clearly delineated standards of review
provides necessary guidance to practitioners who, in reviewing a trial record,
must determine which claims are likely to succeed on appeal and, therefore,
are worthy of valuable real estate in a thirty-five page brief. See, e.g., M.
Bosse, "Standards of Review: The Meaning of Words," 49 Me. L. Rev. 367,
370 (1997) ("[t]o understand and to know what standards of review apply
is important to the practitioner . . . for two reasons: first, to know whether
an appeal is likely to be successful, and second, to argue that appeal").

prove nontestifying complainant's animus against defendant).[7]

I believe that the abuse of discretion standard reflects the context specific nature of evidentiary rulings, which are made in the heat of battle by the trial judge, who is in a "unique position" to "[observe] the context in which particular evidentiary issues arise and who is therefore in the best position to weigh the potential benefits and harms accompanying the admission of particular evidence. As a result, rules have been constructed to allow the trial judge some degree of choice in application of those rules."[8] D. Leonard, "Power and

---

[7] See also, e.g., *State* v. *Skakel*, 276 Conn. 633, 728–29, 888 A.2d 985 (application of residual exception to hearsay rule), cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006); *Margolin* v. *Kleban & Samor, P.C.*, 275 Conn. 765, 779, 882 A.2d 653 (2005) (admissibility under business records exception).

[8] I recognize that the term "abuse of discretion" has been criticized as formless and standardless with respect to its utility for guiding trial court decision making or meaningful appellate review of those decisions. See *State* v. *James*, 261 Conn. 395, 408–409, 802 A.2d 820 (2002), citing M. Rosenberg, "Judicial Discretion of the Trial Court, Viewed from Above," 22 Syracuse L. Rev. 635, 667 (1971). Judge Richard Markus, a former member of the Ohio Court of Appeals, provides helpful guidance for the review process, as he writes that, "[b]efore according deference to a trial court's discretion, the appellate court should confirm:

"(1) the governing legal principle authorizes discretion for that type of decision, instead of a consistently applied rule of law;

"(2) the underlying facts on which the trial court relied authorized it to make a choice;

"(3) the court's choice fell within an acceptable range;

"(4) the court did not consider improper factors in determining its ability to choose or in making its choice;

"(5) the court did not refuse to consider proper factors in determining its ability to choose or in making that choice; and

"(6) the court did not weigh those factors irrationally in determining its ability to choose or to make that choice." R. Markus, "A Better Standard for Reviewing Discretion," 2004 Utah L. Rev. 1279, 1293–94. Judge Markus writes that "[i]f the ruling does not satisfy the first segment of this six-part test, the court had no discretion to exercise. If it fails to satisfy any of the remaining segments, the court abuses its discretion." Id., 1294. Once an abuse of discretion is determined to exist, then the reviewing court may proceed to any applicable harmless error analysis. See id., 1296–97.

Responsibility in Evidence Law," 63 S. Cal. L. Rev. 937, 956–57 (1990); see also id., 1004 ("while trial courts do not have a 'right to be wrong,' their superior position in observing the progress of the trial creates a zone of practical, if not legal, immunity from reversal with respect to each close evidentiary ruling"). We have emphasized, however, that we will not abdicate our appellate responsibilities and that abuse of discretion review is not a rubber stamp.[9] See, e.g., *State* v. *Cortes,*

---

[9] Appellate review of evidentiary rulings under the abuse of discretion standard has not been the toothless tiger of "unwarranted deference" that appears to concern the majority. My research indicates that, in the last year alone, this court has on four occasions concluded that a trial court abused its discretion with respect to a purely evidentiary ruling, and reversed judgments based on those conclusions. See generally *Prentice* v. *Dalco Electric, Inc.*, 280 Conn. 336, 347, 907 A.2d 1204 (2006) (trial court's admission of scientific expert opinion testimony without *Porter* hearing to assess validity of underlying methodology), cert. denied, 549 U.S. 1266, 127 S. Ct. 1494, 167 L. Ed. 2d 230 (2007); *State* v. *Ritrovato*, 280 Conn. 36, 53, 905 A.2d 1079 (2006) (improper exclusion of evidence of victim's sexual history pursuant to rape shield statute when prosecution had made victim's virginity part of case); *State* v. *Calabrese*, supra, 279 Conn. 410 (exclusion of evidence to impeach hearsay declarant); *State* v. *Sawyer*, 279 Conn. 331, 335, 904 A.2d 101 (2006) (admission of uncharged misconduct). In one other case, we concluded that the trial court had abused its discretion, but also that the impropriety was harmless error not requiring reversal. See *State* v. *George J.*, 280 Conn. 551, 591, 910 A.2d 931 (2006) (hearsay statements contained in investigative records of department of children and families), cert. denied, 549 U.S. 1326, 127 S. Ct. 1919, 167 L. Ed. 2d 573 (2007); see also *State* v. *Skakel*, 276 Conn. 633, 736–37, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006) (declining to consider whether admitted newspaper articles were unduly prejudicial because admission would in any event be harmless error).

I also find it interesting that the term "abuse of discretion" has been criticized academically by judicial authors as having "an unnecessarily pejorative flavor, which implies a condescending superiority over trial court judges who make conscientious efforts to provide reliable service." R. Markus, "A Better Standard for Reviewing Discretion," 2004 Utah L. Rev. 1279, 1303 (authored by former judge of Ohio Court of Appeals); see also A. Mead, "Abuse of Discretion: Maine's Application of a Malleable Appellate Standard," 57 Me. L. Rev. 519, 521 (2005) (former Chief Justice of Maine Superior Court noting that term "suggests that the trial judge has done something that is terribly out of line"). Justice Mead noted that, in response to these concerns, the New Hampshire Supreme Court has "abandoned the language altogether in favor of the term 'sustainable exercise of discretion.'" Id., 521 and n.9, quoting *State* v. *Lambert*, 147 N.H. 295, 296, 787 A.2d 175 (2001) (sentencing case).

276 Conn. 241, 254, 885 A.2d 153 (2005) ("Despite this deferential standard, the trial court's discretion is not absolute. Provided the defendant demonstrates that substantial prejudice or injustice resulted, evidentiary rulings will be overturned on appeal where the record reveals that the trial court could not reasonably conclude as it did."); *State* v. *Cancel*, 275 Conn. 1, 18, 878 A.2d 1103 (2005) ("[W]hen we review claims for an abuse of discretion, the question is not whether any one of us, had we been sitting as the trial judge, would have exercised our discretion differently. . . . Rather, our inquiry is limited to whether the trial court's ruling was arbitrary or unreasonable." [Citation omitted; internal quotation marks omitted.]).

I disagree emphatically with the majority's conclusion that whether a statement is hearsay "require[s] determinations about which reasonable minds may not differ; there is no 'judgment call' by the trial court, and the trial court has no discretion to admit hearsay in the absence of a provision providing for its admissibility." In my view, the statement presented by this case demonstrates precisely why we should continue to give deference to the trial court's determination of whether a statement is hearsay, so long as the trial judge has properly considered the definition of hearsay contained in § 8-1 (3) of the Connecticut Code of Evidence.[10] See *State* v. *Sierra*, 213 Conn. 422, 435, 568 A.2d 448 (1990) ("[d]iscretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner

---

[10] In my view, a trial court that either admits into evidence a statement that is hearsay not subject to an exception, or fails to consider the definition of hearsay, has abused its discretion by disregarding in some way the rules of evidence that are in place to guide that discretion. Cf. *State* v. *Sierra*, 213 Conn. 422, 436, 568 A.2d 448 (1990) ("[T]he balancing process is critical to the determination of whether other crime evidence is admissible. Therefore, notwithstanding our deferential standard of review, the failure of the trial court to balance the probative value of the proffered evidence against its prejudicial tendency constitutes an abuse of discretion.").

to subserve and not to impede or defeat the ends of substantial justice" [internal quotation marks omitted]); see also Conn. Code Evid. § 8-2 ("[h]earsay is inadmissible, except as provided in the Code, the General Statutes or the Practice Book"). As the majority notes correctly, the statement at issue in this case is ambiguous and not easily characterized. In ruling on the state's objections and the defendant's arguments in support of the statement's admissibility, the trial court was, at the very least, implicitly required to determine what the ambiguous statement—" 'I got Richie. I got him good.' "—meant and for what reason the defendant offered it into evidence.[11] See footnote 11 of the majority opinion. This is the very kind of case and fact sensitive determination for which a trial court is particularly well suited.[12] See

---

[11] I agree with the majority that the trial court did not rule specifically on the defendant's argument that the statement was not hearsay, and also that the defendant failed to raise this claim before the Appellate Court in the first instance, thereby rendering the record inadequate for review of this particular claim in this certified appeal. See part II A of the majority opinion. In any event, I view the trial court's analysis, which proceeded directly to the applicability of the state of mind exception, as concluding implicitly that the statement was in fact hearsay.

[12] Accordingly, I reject the reasoning of the four state jurisdictions, specifically the District of Columbia, Iowa, Maryland and Oregon, that specifically review hearsay issues, including the application of hearsay exceptions, as questions of law subject to de novo review. See cases cited in footnote 9 of the majority opinion. I also disagree with the four state jurisdictions, specifically Florida, Illinois, Maine and Utah, and the three federal Circuit Courts of Appeals, specifically the Third, Sixth and Ninth, that apply a hybrid standard whereby the determination of whether a statement is hearsay is subject to plenary review, but the application of exceptions to the hearsay rule is reviewed for abuse of discretion. See *United States* v. *Price*, 458 F.3d 202, 205 (3d Cir. 2006) ("Whether a statement is hearsay is a legal question subject to plenary review. . . . If the district court correctly classifies a statement as hearsay, its application of the relevant hearsay exceptions is subject to review for abuse of discretion." [Citation omitted.]), cert. denied, 549 U.S. 1147, 127 S. Ct. 1014, 166 L. Ed. 2d 764 (2007); *United States* v. *Washington*, 462 F.3d 1124, 1135 (9th Cir. 2006) ("Whether a district court correctly construed the hearsay rule is a question of law we review de novo. . . . We review a district court's decision to admit evidence as non-hearsay for an abuse of discretion." [Citation omitted.]); *United States* v. *Gibson*, 409 F.3d 325, 337 (6th Cir. 2005) (stating that "[w]e review evidentiary rulings

*State* v. *Reyes*, 81 Conn. App. 612, 620, 841 A.2d 237 (2004) ("[t]he court's evidentiary rulings are given great deference precisely because the court was in the best position to hear and to assess the witnesses' testimony in the context of the entire trial").

In the present case, there is no claim that the trial court improperly construed the meaning of the state of mind exception, or violated the defendant's constitu-

by the district court, including alleged violations of the hearsay rule, under the abuse-of-discretion standard," and also that "[w]e review de novo a district court's conclusions of law, such as . . . whether evidence offered at trial constituted hearsay within the meaning of the Federal Rules of Evidence"); *K.V.* v. *State*, 832 So. 2d 264, 265–66 (Fla. App. 2002) ("The abuse of discretion standard applies in cases where the proponent of the evidence is seeking to have it come in under a hearsay exception. . . . However, the question of whether evidence falls within the statutory definition of hearsay is a question of law." [Citation omitted.]); *People* v. *Caffey*, 205 Ill. 2d 52, 90, 792 N.E.2d 1163 (2001) (using abuse of discretion standard to review claims about applicability of various hearsay exceptions, including state of mind and declaration against penal interest, when trial court's rulings were based on "the specific circumstances of this case and not on a broadly applicable rule"), cert. denied, 536 U.S. 944, 122 S. Ct. 2629, 153 L. Ed. 3d 810 (2002); *In re A.B.*, 308 Ill. App. 3d 227, 234, 719 N.E.2d 348 (1999) ("[A] trial court's determination that a particular statement is or is not hearsay [either under the common law or pursuant to statute] is a question of law because it does not involve the exercise of discretion, fact finding, or credibility assessments. . . . Only after a trial court has made the legal determination that a particular statement is or is not hearsay is it vested with the discretion to admit or bar the evidence . . . based upon relevancy, prejudice, or other legally appropriate grounds." [Citations omitted.]); *State* v. *Cornhuskers Motor Lines*, 854 A.2d 189, 192 (Me. 2004) (applying abuse of discretion standard to review application of party opponent exception to allegedly falsified truck logs); *State* v. *White*, 804 A.2d 1146, 1150 (Me. 2002) (determining whether identification statement made to state trooper was for truth of matter asserted and stating that "[a] trial court's decision to admit alleged hearsay is a question of law, which we review de novo" [internal quotation marks omitted]); *Wayment* v. *Clear Channel Broadcasting, Inc.*, 116 P.3d 271, 286 (Utah 2005) ("Whether proffered evidence meets the definition of hearsay in Utah Rule of Evidence 801 is a question of law, reviewed for correctness. . . . Nevertheless, because application of the hearsay rules in a specific case is so highly fact-dependent, a district court's conclusions on such issues are entitled to some measure of deference." [Citations omitted.]).

tional rights. Accordingly, I emphasize my adherence to the abuse of discretion standard for reviewing simple evidentiary issues like that presented by this case, and I join only part II of the majority opinion, which concludes that the trial court did not abuse its discretion by sustaining the state's objection to the statement.