******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* XAVIER RIVERA
(AC 43411)

Alvord, Elgo and Pellegrino, Js.

*Syllabus*

Convicted, after a jury trial, of various crimes, including murder, in connection with the shooting death of the victim, the defendant appealed. One individual, R, witnessed the shooting and called 911, but later, R was unable to identify the defendant in a photographic array prepared by the police. Several weeks after the shooting, the defendant and V were discussing the shooting in the defendant's vehicle, and the defendant admitted to having killed the victim. Without the defendant's knowledge, V had recorded the conversation on his cell phone and brought the recording to the police and, as the police requested, V then e-mailed the recording to the police. The state introduced a copy of V's recording into evidence at trial, over the defendant's objection. *Held*:

1. The trial court acted within its discretion when it limited two of defense counsel's closing arguments by providing the jury with curative instructions:

    a. Defense counsel improperly asked the jury to engage in speculation and improperly commented on facts not in evidence when counsel asked the jury to consider why the state did not ask R to make an in-court identification of the defendant, there having been no evidence in the record on which the jury could have based such a conclusion and counsel was well aware of the reason why the state did not make such a request; moreover, because it was well within the court's discretion to give its own curative instruction to the jury, the defendant's claim that the court was required to use the jury instruction language set forth in *State* v. *Dickson* (322 Conn. 410) was unavailing, as that argument was based on an incorrect reading of *Dickson*, and the jury instruction language therein was inapplicable.

    b. Defense counsel's investigative omission argument regarding the lack of a voice exemplar taken from the defendant to question whether it was the defendant's voice on the recording made by V improperly commented on facts not in evidence, the record having contained no evidence that defense counsel ever questioned any of the state's witnesses regarding a voice exemplar, ever sought a voice exemplar, or presented any testimony, expert or otherwise, on the subject of voice exemplars or police investigative techniques.

2. The defendant's claim that the trial court erred in admitting into evidence a copy of the recording of the defendant's confession was unavailing: the court did not abuse its discretion because a copy of the recording, rather than the original, was admissible pursuant to the applicable provisions of the Connecticut Code of Evidence (§§ 10-1, 10-2, and 10-3) and there was ample evidence in the record from which the court could have concluded that admission of the copy of the recording would not be unfair to the defendant; accordingly, because the provisions of the Code of Evidence ensured a fair and just outcome, this court declined to exercise its supervisory powers to heighten the requirements for the admission of copies of digital evidence.

Argued May 15—officially released September 29, 2020

*Procedural History*

Substitute two part information charging the defendant, in the first part, with the crimes of murder, conspiracy to commit assault in the first degree, unlawful restraint in the first degree, unlawful discharge of a firearm, and carrying a pistol without a permit, and, in the second part, with criminal possession of a pistol or revolver, brought to the Superior Court in the judicial district of Fairfield, where the first part of the informa-

tion was tried to the jury before *Kavanewsky, J.*; verdict of guilty; thereafter, the state entered a nolle prosequi as to the second part of the information, and the court, *Kavanewsky, J.*, rendered judgment in accordance with the verdict, from which the defendant appealed. *Affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Kathryn W. Bare*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, former state's attorney, and *Marc R. Durso*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Xavier Rivera, appeals from the judgment of conviction, rendered after a jury trial, of the crimes of murder in violation of General Statutes § 53a-54a (a), conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-48, unlawful restraint in the first degree in violation of General Statutes § 53a-95, unlawful discharge of a firearm in violation of General Statutes § 53-203, and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that the trial court abused its discretion by (1) impermissibly limiting defense counsel's argument with curative instructions to the jury and (2) admitting into evidence a copy of an audio recording of the defendant over his objections. With regard to his evidentiary claim, the defendant claims, in the alternative, that this court should exercise its supervisory powers to raise the threshold for the admission of copies of digital evidence. We disagree and affirm the judgment of the trial court.

The following facts, which the jury could have reasonably found, and procedural history are relevant to the defendant's appeal. At approximately midnight on December 24, 2016, the defendant, Alexis Vilar and Moises Contreras travelled to the area of 287 North Avenue in Bridgeport, where an AutoZone store and Popeyes Louisiana Kitchen (Popeyes) are located. The parking lot of the AutoZone was the location where a group of car enthusiasts, including the victim, Miguel Rivera,[1] gathered to socialize on a regular basis. The defendant, Vilar, and Contreras were travelling to the area of the AutoZone because the defendant intended to confront the victim there. The defendant travelled alone in his vehicle, and Vilar and Contreras travelled together in Vilar's vehicle. The defendant, Vilar, and Contreras arrived in the area of the AutoZone and Popeyes shortly after midnight, and parked a short distance away from the gathering in the AutoZone parking lot.

The defendant approached the victim on foot and pulled him out of his vehicle. The defendant and Contreras then dragged the victim across the parking lot, where the defendant struck him across the face with his pistol and Contreras fired two shots from his revolver. The victim pleaded with the defendant, and the defendant proceeded to shoot him several times with his pistol. The victim then made his way toward the Popeyes drive-thru, where he collapsed and ultimately died as a result of the gunshot wounds. Immediately after shooting the victim, the defendant fled the scene in his vehicle, and Vilar and Contreras fled together in Vilar's vehicle. While the incident took place, Jesus Rodriguez was sitting in a parked vehicle in the AutoZone parking lot. From his vehicle, Rodriguez witnessed

the incident in its entirety. Rodriguez then proceeded to drive away from the scene and call 911.

On January 15, 2017, the defendant and Vilar spoke privately in the defendant's vehicle about the incident that occurred on December 24, 2016. Without the defendant's knowledge, Vilar recorded the conversation on his cell phone. During the conversation, the defendant admitted to having killed the victim. On January 19, 2018, Vilar brought the recording to the Bridgeport Police Department (department) and identified the voices on the recording as himself and the defendant. Vilar then e-mailed the recording to the police, per their instructions. The defendant was arrested on January 31, 2017, and charged with murder, conspiracy to commit assault in the first degree, unlawful restraint in the first degree, unlawful discharge of a firearm, and carrying a pistol without a permit. Following a jury trial, the defendant was convicted of all five counts. The court thereafter sentenced the defendant to a total effective sentence of fifty-five years of imprisonment, with a mandatory minimum of thirty years, and this appeal followed. Additional facts and procedural history will be set forth as necessary.

## I

The defendant challenges his conviction of all counts on the ground that the trial court abused its discretion by improperly intervening in the closing arguments and, over defense counsel's objection, directing the jury to disregard portions of defense counsel's argument. Specifically, the defendant argues that the court abused its discretion by giving the jury a curative instruction addressing the fact that Rodriguez did not provide an in-court identification of the defendant and a curative instruction regarding defense counsel's "investigative omission" argument.

## A

First, we address the defendant's claim that the court abused its discretion by giving a curative instruction to the jury addressing the fact that Rodriguez did not provide an in-court identification of the defendant. Specifically, the defendant claims that the court abused its discretion by impermissibly limiting defense counsel's argument with this instruction. In the alternative, the defendant claims that the court abused its discretion by giving its own instruction to the jury instead of using the language that was prescribed by our Supreme Court in *State* v. *Dickson*, 322 Conn. 410, 141 A.3d 810 (2016), cert. denied,     U.S.    , 137 S. Ct. 2263, 198 L. Ed. 2d 713 (2017).[2]  We disagree.

The following additional facts and procedural history are relevant to our resolution of the defendant's claims. On January 21, 2017, Rodriguez was interviewed by members of the department. At trial, Rodriguez was called as a witness by the state. While Rodriguez was

on the witness stand, the state did not ask for, and Rodriguez did not provide, an in-court identification of the defendant. After Rodriguez' testimony, it was stipulated that during his interview with the department, Rodriguez was shown an array of eight photographs, which included a photograph of the defendant, and that Rodriguez did not identify the defendant at that time. During closing arguments, defense counsel made the following statement with regard to Rodriguez: "He was shown . . . an array of photographs that included [the defendant's] picture and . . . he did not pick [the defendant] as the shooter . . . . And he was in court . . . on the witness stand. Did the prosecutor . . . say to him, hey, do you see the guy in this courtroom who you saw? . . . [D]oes the state say to him . . . do you see the guy here in the courtroom? No, never says anything." The trial court then addressed, outside of the presence of the jury, that portion of defense counsel's argument: "[T]here was a stipulation that [Rodriguez] was shown a photo array, which included a picture of the defendant, and yet he did not make an identification of the defendant. . . . However, you proceeded to say in your argument, as I believe, whether or not that the state did not ask . . . Rodriguez the question then, do you see this guy in court? And that's clearly improper argument because the law is that if somebody cannot make an out-of-court identification, that the state is precluded by law from asking the witness, do you see the guy in court?" The court then provided a curative instruction to the jury regarding this portion of defense counsel's argument: "[W]hen . . . Rodriguez, who testified as a witness in court, I think it was suggested . . . the state did not ask him whether or not he could identify the defendant here in court. Disregard that question and any thought of that question. . . . You don't need to know the reason why, but I'm telling you just to disregard that line of questioning."

1

We first address the defendant's claim that the court abused its discretion by limiting defense counsel's argument based on the fact that Rodriguez did not provide an in-court identification of the defendant. We conclude that defense counsel improperly asked the jury to engage in speculation and improperly commented on facts not in evidence, and that it was well within the trial court's discretion to limit defense counsel's closing argument by giving a curative instruction to the jury.

Before addressing the defendant's claim in full, we first set forth the applicable standard of review. Our Supreme Court has held that "[i]t is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, [and] to prevent the jury from considering matters in the realm of speculation . . . ." *State* v.

*Arline*, 223 Conn. 52, 59, 612 A.2d 755 (1992). "A trial court has wide discretion to determine the propriety of counsel's argument and may caution the jury to disregard improper remarks in order to contain prejudice." *State* v. *Herring*, 210 Conn. 78, 102, 554 A.2d 686, cert. denied, 492 U.S. 912, 109 S. Ct. 3230, 106 L. Ed. 2d 579 (1989). Accordingly, we will overturn the trial court's decision to limit counsel's argument in this manner only if the court has committed an abuse of discretion. Id. "In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors." (Internal quotation marks omitted.) *Hurley* v. *Heart Physicians*, *P.C.*, 298 Conn. 371, 392, 3 A.3d 892 (2010).

In support of his argument, the defendant claims that "[defense counsel's] argument about whether the jury should find reasonable doubt in the inability of . . . Rodriguez to identify [the defendant] in court was proper." This claim, however, mischaracterizes the argument made by defense counsel at trial. Defense counsel was not referring to Rodriguez' inability to identify the defendant, but to the fact that the state did not ask Rodriguez to make an in-court identification of the defendant, as defense counsel had stated: "[H]e was in court . . . on the witness stand. Did the prosecutor . . . say to him, hey, do you see the guy in this courtroom who you saw? . . . [D]oes the state say to him . . . do you see the guy here in the courtroom? No, never says anything." As evidenced by the stipulation regarding Rodriguez, and our Supreme Court's decision in *State* v. *Dickson*, supra, 322 Conn. 446, on which the defendant heavily relies, the state was precluded from asking Rodriguez to make an in-court identification without first requesting permission from the court. As the record clearly shows, the state did not make such a request, nor did it ask Rodriguez to make an in-court identification of the defendant. Defense counsel, however, nevertheless asked the jury to consider why the state did not ask Rodriguez to make an in-court identification of the defendant.

As set forth previously, it is within the discretion of the trial court to limit final arguments for the purpose of preventing comments on facts not properly in evidence, as well as for the purpose of preventing the jury from considering matters in "the realm of speculation . . . ." *State* v. *Arline*, supra, 223 Conn. 59. In asking the jury to consider why the state did not ask Rodriguez to make an in-court identification of the defendant, defense counsel was asking the jury to enter "the realm of speculation," an area that is clearly off limits. See id. Defense counsel was well aware of the reason why the state did not ask Rodriguez to make an in-court identification, and in fact had agreed to a stipulation to that effect. Defense counsel, however, still proceeded to ask the jury to speculate as to that reason, with there

being no evidence in the record on which the jury could have based a conclusion. It is for this reason that the trial court provided a limiting instruction to the jury, and we see no possible alternative that the court could have employed; defense counsel clearly asked the jury to engage in improper speculation, and his argument in this regard was not based on evidence on the record. For these reasons, the trial court was well within its discretion to limit defense counsel's argument by giving a curative instruction to the jury. See id.

2

Next, we address the defendant's alternative argument, namely, that the court committed an abuse of discretion by providing the jury with a curative instruction using language other than the language prescribed by our Supreme Court in *Dickson*. Specifically, the defendant argues that the trial court was required to use the language from *Dickson* to instruct the jury because Rodriguez was unable to make an out-of-court identification of the defendant. Because this argument is based on an incorrect reading of *Dickson*, we conclude that it was well within the trial court's discretion to give its own instruction to the jury.

As established previously, the trial court has wide discretion when determining the propriety of closing arguments and instructing the jury to disregard improper remarks for the purpose of avoiding prejudice. See *State* v. *Herring*, supra, 210 Conn. 102. Accordingly, we will overturn the trial court's decision to provide a limiting instruction to the jury only if the court has abused its discretion. See id.

In *Dickson*, our Supreme Court established that "[i]n cases in which there has been no pretrial identification . . . and the state intends to present a first time in-court identification, the state must first request permission to do so from the trial court." *State* v. *Dickson*, supra, 322 Conn. 445. If the court does not permit the requested in-court identification, and the state requests an instruction, the trial court should then use the following language to instruct the jury: "[A]n in-court identification was not permitted because inherently suggestive first time in-court identifications create a significant risk of misidentification and because either the state declined to pursue other, less suggestive means of obtaining the identification or the eyewitness was unable to provide one." Id., 449. This means that there are several prerequisites that must be met for the trial court to be required to use the language from *Dickson* referenced by the defendant: (1) the state must request permission to make a first time in-court identification; (2) the trial court must deny the request; and (3) the state must then request that the trial court provide an instruction to the jury. See id., 446–49. Because these prerequisites were not satisfied, the jury instruction language set forth by our Supreme Court in *Dickson* was not applica-

ble. Accordingly, we find that it was well within the trial court's discretion to use its own language for the curative jury instruction.

B

We now turn to the defendant's claim that the court abused its discretion by giving a curative instruction to the jury regarding defense counsel's "investigative omission" argument. We conclude that defense counsel improperly commented on facts not in evidence, and that it was well within the court's discretion to limit the defendant's closing argument in this way.

The following additional facts and procedural history are relevant to our resolution of this issue. At trial, Jorge Cintron, a detective with the department, and Vilar were called as witnesses by the state. While on the witness stand, both Detective Cintron and Vilar testified regarding Vilar's recording of the defendant's confession. Neither the state nor defense counsel addressed the topic of "voice exemplars," or of the investigative methods used by the police with regard to the recording. Furthermore, defense counsel did not call any witnesses.

During closing arguments, defense counsel repeatedly asked the jury to speculate as to why a voice exemplar was never taken from the defendant during the course of the police investigation, questioning whether the voice on the recording was actually that of the defendant. The court addressed this portion of defense counsel's argument by pointing out that it was not supported by the record, and that lack of evidence cannot be argued without a proper foundation in the record. The court then provided a curative instruction to the jury: "I'm going to tell you just to disregard any suggestion that the police could have, or could not have, or didn't, or did—did not get a voice exemplar. I know that's never really been defined for you per se, but disregard that one particular line."

With regard to closing arguments, our Supreme Court has long held that, "[w]hile the privilege of counsel in addressing the jury should not be too closely narrowed or unduly hampered, it must never be used as a license to state, or to comment upon, or to suggest an inference from, facts not in evidence, or to present matters which the jury have no right to consider." *State* v. *Ferrone*, 96 Conn. 160, 169, 113 A. 452 (1921). The trial court has wide discretion to determine the propriety of counsel's argument, and we will overturn the trial court's action limiting the scope of counsel's argument only if the trial court has abused this discretion. See *State* v. *Herring*, supra, 210 Conn. 102. An abuse of discretion exists where the trial court has decided a matter in an arbitrary manner or based on improper or irrelevant factors, where alternative options were available. See *Hurley* v. *Heart Physicians*, *P.C.*, supra, 298 Conn. 392.

In support of his argument, the defendant cites to language employed by our Supreme Court in which the court stated: "[D]efendants may use evidence regarding the inadequacy of the investigation into the crime with which they are charged as a legitimate defense strategy . . . [and] [a] defendant may . . . rely upon relevant deficiencies or lapses in the police investigation to raise the specter of reasonable doubt, and the trial court violates his right to a fair trial by precluding the jury from considering evidence to that effect." (Citation omitted; internal quotation marks omitted.) *State* v. *Wright*, 322 Conn. 270, 282, 140 A.3d 939 (2016). That language, however, actually undermines the defendant's position, as the court's statement that "the trial court violates [a defendant's] right to a fair trial by precluding the jury from considering *evidence* to that effect"; (emphasis added; internal quotation marks omitted) id.; means that a defendant does not have a right to simply point to alleged deficiencies or lapses in the police investigation—any such deficiencies or lapses must be relevant and must be supported by evidence in the record. See id.

Central to our resolution of this issue is defense counsel's repeated use of the term "voice exemplar" while addressing the jury. In fact, defense counsel used the term voice exemplar only when making his investigative omission argument to the jury; he did not use any broad or general terms to refer to the investigation, or lack thereof, undertaken by the police. The defendant now claims that defense counsel was using the term "voice exemplar" in a general way. "Voice exemplar," however, is an inherently technical term with a technical definition meaning a voice sample taken from an individual "to measure the physical properties of his or her voice . . . ." *State* v. *Palmer*, 206 Conn. 40, 63, 536 A.2d 936 (1988). The record contains no voice exemplar taken from the defendant, nor does it indicate that defense counsel ever questioned any of the state's witnesses as to whether a voice exemplar had been taken, or could or should have been taken. Moreover, there was no evidence that defense counsel ever sought a voice exemplar.

Furthermore, the defendant did not present any testimony, expert or otherwise, on the subject of voice exemplars or police investigative techniques, and he failed to introduce any relevant evidence, which amounts to exactly what our Supreme Court cautioned against in *Wright* when it stated that "[a] defendant . . . does not have an unfettered right to elicit evidence regarding the adequacy of the police investigation" and "must do more than simply seek to establish that the police could have done more." *State* v. *Wright*, supra, 322 Conn. 284. Given the lack of evidence in the record to support defense counsel's investigative omission argument, "the importance of restricting comments

made during closing arguments to matters related to the evidence before the jury"; *State* v. *Rios*, 74 Conn. App. 110, 119, 810 A.2d 812 (2002), cert. denied, 262 Conn. 945, 815 A.2d 677 (2003); and the court's wide discretion to determine the propriety of counsel's closing argument and to instruct the jury to disregard improper remarks to contain prejudice; *State* v. *Herring*, supra, 210 Conn. 102; we conclude that the court acted within its discretion when it provided a limiting instruction to the jury in this regard.

## II

The defendant also claims that the court abused its discretion by admitting into evidence, over the defendant's objection, a copy of the recording of the defendant's confession made by Vilar. The defendant further claims, in the alternative, that if the recording was properly admitted this court should exercise its supervisory powers to heighten the requirements for the admissibility of copies of digital evidence. Finally, the defendant claims that if this court declines to exercise its supervisory powers and determines that the copy of the recording was properly admitted into evidence, we should conclude that the trial court abused its discretion by admitting the recording into evidence based "on Vilar's word alone." We disagree.

### A

First, we address the defendant's claim that the court abused its discretion by admitting a copy of the recording made by Vilar into evidence on the basis of an incorrect interpretation of the Connecticut Code of Evidence. We disagree.

The following additional facts and procedural history are relevant to our resolution of this claim. At trial, Detective Cintron was called as a witness by the state. Detective Cintron testified that Vilar played the recording of the defendant's confession for him on his cell phone, and that he instructed Vilar to e-mail the recording to him. Detective Cintron further testified that, after receiving the recording by e-mail, he downloaded it and saved it onto a compact disc. Additionally, Detective Cintron verified that the recording on the compact disc was exactly the same as the recording on Vilar's cell phone, and that it had not been altered in any way. Before the state offered the recording as a full exhibit, Vilar testified that the recording had not been manipulated, and that he had listened to the recording and identified the voices on the recording as himself and the defendant. Defense counsel objected to the admission of the recording on several grounds, namely, that Vilar did not give his cell phone containing the recording to the police, that the cell phone containing the recording was no longer available, and that there was a gap of time between when the recording was made and when it was given to the police by Vilar.

Over defense counsel's objections, the court admitted the recording as a full exhibit and played it for the jury.

Before addressing the defendant's claim in full, we first set forth the applicable standard of review. "To the extent a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary." *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007). "We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." Id. "In order to determine the appropriate standard of review, we must look to the precise nature of the claim raised on appeal." *State* v. *Miller*, 121 Conn. App. 775, 780, 998 A.2d 170, cert. denied, 298 Conn. 902, 3 A.3d 72 (2010). The defendant here argues that the trial court misinterpreted §§ 10-1, 10-2, and 10-3 of the Connecticut Code of Evidence, and thereby incorrectly admitted a copy of the recording into evidence. Because the admission of the recording is at issue, and because that admission was based on the court's interpretation of the Code of Evidence, our standard of review for this claim is plenary. See *State* v. *Saucier*, supra, 218.

As stated previously, the defendant argues that under the Code of Evidence, only the original recording of Vilar's conversation with the defendant on Vilar's cell phone was admissible. Under § 10-1 of the Connecticut Code of Evidence, which adopts the best evidence rule, "except as otherwise provided by the Code," the original of a recording must be admitted into evidence to prove the contents of that recording. Conn. Code Evid. § 10-1. Section 10-3 of the Connecticut Code of Evidence sets forth the situations in which an original recording is not required and provides that the original of a recording is not required, and other evidence of the contents of the recording is admissible, if "[a]ll originals are lost or have been destroyed, unless the proponent destroyed or otherwise failed to produce the originals for the purpose of avoiding production of an original . . . ." Conn. Code Evid. § 10-3 (1). In the present case, it is clear that the original recording is no longer available, as it was on Vilar's cell phone, which was no longer in his possession at the time of the trial. Pursuant to § 10-3, a copy is admissible if the original is lost or has been destroyed, so long as the proponent did not destroy or fail to produce the original for the purpose of avoiding its production. Conn. Code Evid. § 10-3 (1). The defendant has failed to point to any evidence in the record demonstrating that the original recording was made unavailable for the purpose of avoiding its production at trial. Vilar played the original recording for the police and then e-mailed a copy of the recording to the police, per Detective Cintron's instructions. At no time did the police request or order that Vilar turn over the cell phone containing the original recording. Furthermore, both Vilar and Detective Cintron verified that the copy of the recording e-mailed to the police

was an exact copy of the original. On the basis of these facts, we cannot conclude that the original recording was made unavailable for the purpose of avoiding its production. The original and copy were exactly the same in all respects, in that the only practical difference between them was the location where the recording was physically stored. For this reason, there has been no showing of a motive by the state to make the original recording unavailable. Accordingly, the copy of the recording satisfies the requirement of § 10-3 of the Connecticut Code of Evidence that the proponent did not destroy or fail to produce the original for the purpose of avoiding its production, and it was admissible under §§ 10-1 and 10-3 of the Connecticut Code of Evidence. We therefore conclude that the court's admission of the copy of the recording was not based on an improper interpretation of those provisions of the Code of Evidence.

B

Next, we address the defendant's request that we exercise our supervisory powers to heighten the requirements for the admission of copies of digital evidence. Although "[i]t is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice"; (internal quotation marks omitted) *State* v. *Diaz*, 302 Conn. 93, 106, 25 A.3d 594 (2011); "[o]ur supervisory powers are invoked only in the rare circumstances where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *State* v. *Kuncik*, 141 Conn. App. 288, 292–93, 61 A.3d 561, cert. denied, 308 Conn. 936, 66 A.3d 498 (2013). Because we conclude that the provisions of the Connecticut Code of Evidence have ensured a fair and just outcome, we decline to exercise our supervisory power as the defendant requests.

After reviewing the record and relevant sections of the Connecticut Code of Evidence, we conclude that it is clear that this case does not constitute the rare circumstance in which we may exercise our supervisory powers. The copy of the recording was properly admitted pursuant to the Code of Evidence, and the jury was left to determine the weight that it should be given. Allowing the jury to make this determination ensures a fair and just outcome, and is the only level of protection that is needed here. Accordingly, we decline to exercise our supervisory authority to heighten the requirements for the admission of copies of digital evidence.

C

Having determined that the court's admission of a copy of the recording into evidence was based on a correct interpretation of the Code of Evidence, and having declined to exercise our supervisory powers to

heighten the requirements for the admission of copies of digital evidence, we now address the defendant's final claim that the trial court abused its discretion by admitting the copy of the recording into evidence "on Vilar's word alone." Specifically, the defendant claims that, under § 10-2 of the Connecticut Code of Evidence, "[t]he offer of a copy of the recording was unfair to the defendant," and that "the trial court should have exercised its discretion to exclude the copy of Vilar's recording . . . ."

Before addressing the defendant's claim in full, we again set forth the applicable standard of review. Where the trial court's decision to admit evidence is based on a correct view of the law, we review that decision for an abuse of discretion. See *State* v. *Saucier*, supra, 283 Conn. 218. The defendant claims that, even if the copy was admitted pursuant to a correct reading of the Connecticut Code of Evidence, the trial court's decision was, nevertheless, erroneous. Accordingly, we will overturn the trial court's decision to admit a copy of the recording into evidence only if the trial court committed an abuse of discretion. See *State* v. *Herring*, supra, 210 Conn. 102. An abuse of discretion exists where the court has decided a matter in an arbitrary manner or on the basis of improper or irrelevant facts, where alternative options are available. See *Hurley* v. *Heart Physicians*, *P.C.*, supra, 298 Conn. 392.

Section 10-2 of the Connecticut Code of Evidence provides in relevant part that "[a] copy of a . . . recording . . . is admissible to the same extent as an original unless . . . it would be unfair to admit the copy in lieu of the original." Conn. Code Evid. § 10-2 (B). The defendant's claim that it was unfair for the trial court to admit a copy of the recording into evidence is unavailing. There is ample evidence in the record from which the court could have concluded that the admission of the copy of the recording would not be unfair to the defendant. As discussed in part II A of this opinion, there is no evidence demonstrating that the original of the recording was purposefully made unavailable. Additionally, Detective Cintron verified that the copy of the recording was exactly the same as the original on Vilar's cell phone and that the copy had not been altered in any way. Furthermore, it should be noted that the commentary to § 10-2 recognizes that "in light of the reliability of modern reproduction devices . . . a copy derived therefrom often will serve equally as well as the original when proof of its contents is required." Conn. Code Evid. § 10-2, commentary. For these reasons, we conclude that the trial court's decision that the admission of the copy of the recording would not be unfair to the defendant was not made in an arbitrary or improper manner, as the defendant suggests. Accordingly, it was well within the discretion of the trial court to admit the copy of the recording into evidence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the defendant and the victim share the same last name, they are unrelated.

[2] The following language was prescribed by our Supreme Court for use by trial courts when a jury instruction has been requested by the state after a first time in-court identification has not been permitted: "[A]n in-court identification was not permitted because inherently suggestive first time in-court identifications create a significant risk of misidentification and because either the state declined to pursue other, less suggestive means of obtaining the identification or the eyewitness was unable to provide one." *State* v. *Dickson*, supra, 322 Conn. 449.